**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LARRY HEARD, professionally known as "Mr.
Fingers" and ROBERT OWEN,

                Plaintiffs,

       v.                                   Case No.

TRAX RECORDS, INC., PRECISION/TRAX
RECORDS, an entity of unknown legal origins,
RACHAEL SHERMAN née RACHAEL CAIN
p/k/a SCREAMIN' RACHAEL, doing business
as SCREAMING RACHAEL CAIN MUSIC
and TRAX RECORDS, and JOHN DOES 1-10,

                Defendants.

## COMPLAINT

Plaintiffs, Larry Heard and Robert Owens ("Plaintiffs"), by their undersigned attorneys, hereby submit their Complaint against defendants Trax Records, Inc., Precision/Trax Records, Rachael Sherman née Rachael Cain p/k/a Screamin' Rachael d/b/a Screaming Rachael, Cain Music, and Trax Records (collectively, "Defendants"), and allege as follows:

### PRELIMINARY STATEMENT

1.     This case involves an all-too familiar story of the early days of the music industry. Talented, but unrepresented, musicians hungry for their first break were lulled into a business relationship with an unscrupulous record company that made promises it never intended to keep and masqueraded as paternalistic benefactors for those artists – like a wolf in sheep's clothing.

2.     The musicians sometimes signed away valuable rights to their music for consideration that was not merely inadequate, but it was never paid. Even worse, the record company exploited the artists' other musical works with neither permission nor license to further reap the fruits of their creative output. Eventually, the artists were relegated to mere commodities

whose professional names were slapped onto vinyl records or other goods exploited by the record company to lure consumers who understood that the artist's professional name was a sign of great value.

3.    This is the story of Larry Heard, Robert Owens, and Trax Records.

4.    During the decades since Defendants first began exploiting musical works created by Larry Heard and/or Robert Owens, neither Heard nor Owens was properly compensated for the great value of each's musical labors.   Instead, Defendants enriched themselves and brazenly exploited those musical works for their sole benefit, while encouraging and enabling others to do the same.

5.    And it does not end with just Heard and Owens; there are many others. 5Mag.net magazine recently reported the following about Trax Records and its deceased founder Larry Sherman:

> Listeners and today's collectors often complain about poor pressings with "pops" and imperfections, reputedly from the use of cheap or recycled vinyl. Many of 5 Mag's early profiles of some of Chicago House Music's legends outlined the feeling by the then-young, often black artists of exploitation. Jamie Principle told 5 Mag in 2011 that he never had a contract of any kind with Trax, while DJ Pierre of Phuture, whose Acid Tracks was released on Trax, claimed he never received any royalties at all from the label for what became one of the best-selling tracks of all time.

6.    DJ Magazine reported on the death of Larry Sherman and stated, "Sherman's legacy is a complex one, however, with an alleged history of not paying royalties, not providing artists with proper contracts, and using cheap, poor quality vinyl."

7.    It also happened with another house-music legend known as "Frankie Knuckles," an American DJ, record producer, and remixer who, like Owens and Heard, played an important role in developing and popularizing house music in Chicago during the 1980s.

2

8.    Before his untimely death in 2014, Knuckles had called the Trax Records group "barnacles" because "[a]nytime I got some new product coming out they try and piggyback on whatever that it is that I'm doing to try and make whatever they can make off of it."

9.    When Knuckles died, Chicago Mayor Rahm Emanuel said Chicago had "lost one of its most treasured cultural pioneers." Cain issued a press release where she said, in part: "I want to thank people around the world, especially those in dance music culture for honoring Frankie Knuckles. There is no doubt that his music, and the love he shared has changed the lives of so many. Though tragically we have lost him in the physical sense, his legacy and the music he created will never die…House Music would not exist as it does today without Frankie Knuckles."

10.    So true, but Knuckles could have died a richer man and been able to leave something to his heirs, if only Trax had paid him what it owed for its exploitation of his music.

11.    Adonis M. Smith, professionally known as "Adonis," is yet another artist and producer who was cheated by Trax. Adonis recently confirmed on Facebook that he never received any royalties for all of his music released by Trax Records – for the past 34 years  –  which include the pioneering 1986 acid house track *No Way Back* and *We're Rocking Down The House*. Indeed, a fundraiser was recently set up which aims to financially help Adonis because of this decades-long non-payment of royalties he is owed by Trax Records.

12.    Adonis illustrated the issue addressed in this lawsuit with a recent posting on his Facebook page:

>    Do not buy or support Trax Records! Because this label has not paid me one penny in 34 years. Trax Records do not own any rights to my music. Please share this post everywhere. Also tell all distributors to do not sell this record or any other of my songs from this horrible label. Enough is enough.

13.    This action seeks to vindicate Plaintiffs' rights in various musical compositions and sound recordings that they created in the 1980s.  Enough is enough.

## PARTIES

14.    Plaintiff, Larry Heard, professionally known as "Mr. Fingers" ("Heard"), is a resident of the State of Pennsylvania.

15.    Plaintiff, Robert Owens ("Owens"), is a resident of the State of Ohio.

16.    Defendant Trax Records, Inc. ("Trax Inc."), is a corporation created under the laws of the State of Illinois, having a principal place of business in the City of Chicago.

17.    Plaintiffs are informed and believe, and based thereon allege, that Defendant Precision/Trax Records ("Precision/Trax") is an entity of unknown legal origins, having a principal place of business in the City of Chicago, and at all relevant times was owned and operated by Larry Sherman ("Sherman").  Larry Sherman died on April 8, 2020, at the age of 70.

18.    Defendant, Trax Records, Ltd. ("Trax Ltd."), was a corporation created under the laws of the State of Illinois, having a principal place of business in the City of Chicago. Trax Ltd. was administratively dissolved in 1980.

19.    Plaintiffs are informed and believe, and based thereon allege, that at all relevant times, Precision/Trax and Trax Ltd. conducted business through its principal owners and officers Sherman  and Rachel Cain.

20.    Defendant Rachael Sherman née Rachael Cain, professionally known as "Screamin' Rachael" is a resident of Chicago, Illinois. Cain operates a music publishing business through a wholly owned publishing entity "Screaming Rachael Cain Music" (hereinafter Rachael Sherman and Screaming Rachael Cain Music shall be collectively referred to as "Cain").

21.    Plaintiffs are informed and believe, and based thereon allege, that Cain is an owner and officer of Defendants Trax Records, Ltd. and Trax Records, Inc.

22.    John Does 1-10 represent the individuals or companies through which Sherman and/or Cain transact business, the identities of which are presently unknown to Plaintiffs. Plaintiffs therefore sues these Defendants by fictitious names.  Plaintiffs will  amend this Complaint to allege the true names and capacities of these John Doe Defendants when ascertained.

23.    Plaintiffs are informed and believe, and based thereon allege, that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between and among Defendants Cain and Does 1 through 10, inclusive, on the one hand, and Precision/Trax, Trax Ltd. and/or Trax, Inc., on the other, such that any individuality or separateness between them has ceased, and that they and each of them are the alter egos of each other. Plaintiffs are further informed and believe, and based thereon allege, that adherence to the fiction of the separate existence of these Defendants would permit an abuse of the corporate privilege and would promote injustice.

24.    Plaintiffs are informed and believe, and based thereon allege, that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between Precision/Trax, Trax Ltd. and Trax, Inc., and Does 1 through 10, inclusive, such that any individuality or separateness between them has ceased, and that Precision/Trax, Trax Ltd. and Trax, Inc., and Does 1 through 5 are the alter egos of each other. Plaintiffs are further informed and believe, and based thereon allege, that adherence to the fiction of the separate existence of Precision/Trax, Trax Ltd. and Trax, Inc., and Does 1 through 10 as entities distinct from each other would permit an abuse of the corporate privilege and would promote injustice.

## JURISDICTION AND VENUE

25.   This is an action for copyright infringement arising under the Copyright Act of 1976, as amended, Title 17, United States Code, §§ 101 *et seq*. (the "Copyright Act"), and pendant claims pursuant to the laws of the State of Illinois.

26.   The Court has original subject-matter jurisdiction over the Copyright Act claims pursuant to 28 U.S.C. § 1331. To the extent this Complaint contains claims for relief under Illinois law, those claims are specifically authorized to be brought in this Court under the provisions of 28 U.S.C. §§ 1338(a) and 1338(b).

27.   This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.  The citizenship of Plaintiffs is fully diverse from that of Defendants, and the amount in controversy exceeds $75,000, exclusive of interest.

28.   This Court has personal jurisdiction over Defendants because they are domiciled in the State of Illinois and incorporated under the laws of the State of Illinois.

29.   This Court has further personal jurisdiction over Defendants because they, and each of them, conduct business continuously and systematically in Illinois for the purpose of engaging in, *inter alia*, the manufacture and distribution of sound recordings and the licensing of musical compositions created and/or owned by Heard and Owens, as well as related activities within the State of Illinois.

30.   Defendants are further subject to personal jurisdiction based on their acts of placing their products into the stream of commerce with the expectation that such products will be delivered to and viewed by consumers within the State of Illinois and within this District.

31.     Venue is proper in this Judicial District because a substantial part of the events or omissions giving rise to the claim occurred here. Venue is also proper in this Judicial District pursuant to 28 U.S.C. § 1400(a).

**ALLEGATIONS COMMON TO ALL COUNTS**

**Background**

32.     House music's roots lie in the spontaneous combustion in a handful of Chicago clubs in the early 1980s, when clubs only needed one DJ. At the time, Chicago clubs were usually sound-tracked by jukeboxes. "DJing" is the act of playing existing recorded music for a live audience, which started as early as the 1940s. By the 1970s, after the emergence of more sophisticated technologies to manipulate recorded music, two men from New York City - Frankie Knuckles and Larry Levan - took the art of DJing to the next level. The modern DJ's role expanded from just spinning records at clubs, to that of a performer, engineer, and musician who created a seamless and extended mix of music for a dance party or club.

33.     Larry Levan and Frankie Knuckles were two of the first superstar DJs. They began their careers at two of the most important early disco clubs:  the famed Continental Baths, a gay bathhouse located in the basement of The Ansonia Hotel in New York City, and the Gallery located in the SoHo neighborhood of Lower Manhattan.

34.     In 1977, after the Garage closed, Levan took up residency at the night club Paradise Garage, also located in SoHo. Knuckles took up residency at Chicago's The Warehouse Club in a three-story former factory located at 206 South Jefferson Street in downtown Chicago.

35.     Knuckles brought Chicago a style and technique pioneered in, and previously only known to, New York's disco clubs and loft parties, such as mixing and programming a set and using reel-to-reel tapes.

36. Word spread about The Warehouse Club; it is where the term "house" music originated. House music is essentially disco music with electronic drum-machine beats.

37. As a teenager, Heard used to pass the Warehouse Club after school on his way to work late in the evening, wondering why there were so many people hanging out in the street.

38. Although he had never once set foot in the club, that experience stayed with him until his early 20s when he began creating his own music and, by 1984, began to professionally perform as "Mr. Fingers."

39. In 1984, Heard bought his first drum machine and synthesizers and wrote and recorded a few songs that would become legendary — raw versions he calls "prototypes" — including *Mystery of Love* and *Can You Feel It*.

40. Since that time, Heard has been a composer, recording artist, DJ, record producer, and musician, widely known as an important figure in Chicago's house-music scene. Beginning in the 1980s, Heard was the primary creative force, leader, and lead songwriter for the influential house-music group, "Fingers, Inc." He is regarded as a pioneer of deep house music, bridging the gap between the futurism and "posthuman tendencies" of house and the lush, soulful sound of disco.

41. During the next few years, Heard also wrote, recorded, and produced *Washing Machine* which, along with his song *Can You Feel It*, would later be regarded as iconic house-music anthems.

42. Around the same time, Owens was employed in the shipping and receiving department of Illinois' Evanston Hospital. There, he would find free time during his workday and, within the privacy of the hospital's private bathrooms, write songs on toilet paper. Two such songs were *Bring Down the Walls* and *Never No More Lonely*.

43. Larry Heard met Robert Owens through a mutual friend while Owens was working as a DJ in Chicago's underground dance scene. Owens had created some edits of Heard's instrumental works which he gave to friends Ron Hardy and Frankie Knuckles. Shortly thereafter, Owens started writing lyrics for Heard's instrumentals, including *Mystery of Love*, *Distant Planet*, and *Donnie*. Shortly thereafter, Heard and Owens, along with Ron Wilson, formed the musical group known as "Fingers Inc."

44. Since the early 1980s, Owens has been, and is now, a composer, recording artist, DJ, record producer, and musician, best known for his collaboration with Larry Heard and Ron Wilson in the Chicago house group "Fingers Inc." Owens has also worked with many other collaborators in the house-music and electronica genres.

45. Sprung from the spirit of the world of musical improvisation, Fingers Inc. raised the concept of house music to an art form.

46. In 1985, Heard launched his own record label, which would eventually be called Alleviated Records, selling out pressings of his records from the trunk of his car.

47. Shortly thereafter, Heard formed business relationships with two other record labels, Atlanta-based Jack Trax Records and Chicago-based D.J. International Records, homes for mid-1980's to 1990's House, Acid House, Detroit Techno, and Jacking Chicago House.

48. In or about 1985-1986, Heard also wrote, recorded, and/or produced two other songs, and sound recordings of those songs, entitled *Beyond the Clouds* (performed by Heard) and *Bring Down the Walls* (performed and co-written by Robert Owens), were similarly widely popular house-music tracks.

49. In or about 1985-1986, Heard also wrote, recorded, and/or produced other musical compositions and sound recordings entitled *Donnie* (co-written with Irwin Eberhart and Harri

Dennis), *Distant Planet* (co-written with Harri Dennis), *Never No More Lonely* (co-written with Robert Owens), and *Bye-Bye* (co-written with Robert Owens).

50.    The musical compositions entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, *Bring Down the Walls*, *Donnie*, *Distant Planet*, and *Never No More Lonely* shall be referred to herein as the "Compositions."

51.    The sound recordings entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, *Bring Down the Walls*, *Donnie*, *Distant Planet* and *Never No More Lonely* shall be referred to herein as the "Recordings."

**Trax Records**

52.    In 1983, after purchasing the Chicago-based vinyl record-pressing plant, Precision Pressing, Sherman and Jesse Saunders co-founded a record label alternatively called "Trax Records" or "Precision/Trax" (which has no connection to Jack Trax Records). It served as a primary and important distribution outlet for house music.

53.    Defendant Cain was one of the first artists signed by Trax Records. She was (and is) known professionally as "Screamin' Rachael." Cain would later be dubbed the "Queen of House Music" and eventually marry Sherman and become his business partner.

54.    Over the years, Sherman and/or Cain had formed various companies whose names included the term "Trax," including without limitation Trax Records, Ltd. Trax Records, Inc., Precision/Trax Records, and Casablanca/Trax, Inc., leaving a trail of dissolved or bankrupt companies.

55.    Upon information and belief, in 2006, after a period of decline from the late 1990s to early 2000s, Cain revived the label and presently is solely in control of its business operations, and

continued to exploit its catalogue, including the Compositions and Recordings created by Heard and/or Owens.

56.     Upon information and belief, Trax Records built its catalogue by taking advantage of the unsophisticated but creative house-music artists and songwriters by having them sign away their copyrights to their musical works for paltry amounts of money up front and promises of continued royalties throughout the life of the copyrights.

**Documents Which Purport to Grant Trax Records Rights in Heard's Compositions.**

57.     In or about 1985-1987, Heard signed four documents with "Precision/Trax Records" which, at the time, was not a formal legal entity, but rather a trademark utilized by Sherman. At the time, Heard did not have legal counsel.

58.     These documents, described in further detail below, *purportedly* either assigned Heard's share of the copyrights in four musical compositions to Precision/Trax or granted Precision/Trax a mechanical license to record and release those musical compositions on phonograph records, for what would become Heard's' most popular songs and tracks, entitled *Can You Feel It?*, *Washing Machine*, *Beyond the Clouds*, and *Bring Down the Walls* (these musical compositions are herein referred to as the "Heard/Trax Compositions").

59.     The <u>first document</u> is titled "Assignment of Copyright (Musical Composition)," which purports to assign or transfer to Precision/Trax 100% "of all publishing rights and all right, title and interest in and to the copyrights" then possessed by Heard in the musical compositions *Can You Feel It*, *Washing Machine*, and *Beyond the Clouds*. It is undated and appears to be signed by Heard but not by Sherman or anyone else on behalf of Precision/Trax. In exchange for this grant of copyrights, Precision/Trax promised to pay Heard a fixed amount of $3,000.

60. The <u>second document</u> is dated December 30, 1986, and purportedly signed by Heard and Sherman on behalf of Precision/Trax. It is mistitled "Assignment of Copyright (Musical Composition)" because it does not include any provision for the assignment, transfer, or grant of any copyright-ownership interest. But it does purport to grant Precision/Trax a non-exclusive mechanical license for the musical compositions *Can You Feel It*, *Washing Machine*, and *Beyond the Clouds* solely for the purpose of "making and selling phonograph records." In exchange for this purported mechanical license, Precision/Trax promised to pay Heard a fixed amount of $3,000 plus 15% "based on the sale of these records."

61. The <u>third document</u>, dated November 30, 1986, is purportedly signed on December 30, 1986, by Heard and Sherman on behalf of Precision/Trax. It, too, is mistitled "Assignment of Copyright (Musical Composition)" because it does not include any provision for the assignment, transfer, or grant of any copyright-ownership interest. It does, however, purport to grant Precision/Trax a non-exclusive mechanical license for the musical composition *Bring Down the Walls* solely for the purpose of "making and selling phonograph records." In exchange for this purported mechanical license, Precision/Trax promised to pay Heard a fixed amount of $3,000 plus 15% "based on the sale of these records."

62. Critically, these first, second, and third documents (collectively, the "Precision/Trax Documents") do not contain any grant of copyright ownership or any assignment or transfer of any copyright ownership interests in the <u>sound recordings</u> embodying the performances of Heard for *Can You Feel It*, *Washing Machine, Beyond the Clouds*, and *Bring Down the Walls*.

63. The Precision/Trax Documents also lack any grant of rights to sell, license, distribute, or otherwise exploit any of the <u>Recordings</u> of *Can You Feel It*, *Washing Machine, Beyond the Clouds,* and *Bring Down the Wall*.

64. At best, the Precision/Trax Documents were ambiguous. At worst, they constituted unconscionable contracts of adhesion which would result in decades of revenue streams flowing only to Trax/Precision (or other entities formed and operated by Sherman and Cain), with Heard deriving virtually no economic benefit from their exploitation by Defendants.

65. Furthermore, none of the Precision/Trax Documents refers or mentions the Recordings or Compositions entitled *Donnie*, *Distant Planet, Never No More Lonely*, and *Distant Planet*.

66. To Plaintiffs' knowledge, except for the purported limited non-exclusive grants referred to in the Precision/Trax Documents, as hereinabove alleged, no assignments or transfers of any copyright-ownership interests, or other grants, licenses, or permissions of any kind were ever issued to any Defendants, including without limitation, Precision/Trax, for the Compositions or the Recordings.

**Copyright Registrations for the Compositions and the Recordings.**

67. In 1986 and 1987, the Register of Copyrights issued registrations for the copyrights in certain Compositions in the name of Heard, alone or together with his co-authors, including Owens.

68. In 1986 and 1987, the Register of Copyrights also issued registrations in the name of "Trax Records" for the same copyrights in certain Compositions, as well as the Recordings.

69. The titles, copyright claimants, registration numbers, and a description of rights claimed are summarized below:

| TITLE | CLAIMANT(S) - REGISTRANT(S) | REG. NO. | ISSUE DATE | RIGHTS CLAIMED |
|---|---|---|---|---|
| *Can You Feel It* | Larry Heard | PAu-896668 | 10/17/86 | Music |

| TITLE | CLAIMANT(S) - REGISTRANT(S) | REG. NO. | ISSUE DATE | RIGHTS CLAIMED |
|---|---|---|---|---|
| *Can You Feel It* | Trax Records | SR-008153 | 2/26/87 | Sound Recording & Music |
| *Washing Machine* | Trax Records | SR-008153 | 2/26/87 | Sound Recording & Music |
| *Washing Machine* | Larry Heard | PAu-777775 | 11/5/85 | Music |
| *Beyond The Clouds* | Trax Records | SR-008153 | 2/26/87 | Sound Recording & Music |
| *Beyond The Clouds* | Larry Heard | PAu-896546 | 10/20/86 | Music |
| *Bring Down the Walls* | Larry Heard & Robert Owens | PAu-911147 | 11/19/86 | Music |
| *Bring Down the Walls* | Trax Records | SR-081157 | 2/26/87 | Sound Recording & Music |
| *Distant Planet* | Larry Heard & H. Dennis | PAu-1027097 | 11/10/87 | Music |
| *Never No More Lonely* | Larry Heard, Robert Owens | PAu-927655 | 1/27/87 | Music |
| *Donnie* | Larry Heard, I. Eberhart & H. Dennis | PAu-971117 | 3/2/87 | Music |

70. Heard and/or Owens are original authors of each of the Recordings and the Compositions.

71. Since 1986, the Recordings and the Compositions have been sold, distributed, or exploited either directly by Defendants, or any one of them, or licensed by Defendants many times over to licensees throughout the world.

72. Furthermore, some of the Recordings have been materially edited, remixed, and otherwise altered without Heard and/or Owen's knowledge or permission, including making

derivative versions through the addition of other writers (including Cain). In fact, there are over one dozen versions of *Can You Feel It* that were released by Trax Records alone.

73. Heard has never received a single accounting or payment from Defendants for monies derived from the exploitations of his musical works.

74. Owens has never received a single accounting or payment from Defendants for monies derived from the exploitations of his musical works.

75. To the extent that mechanical rights were lawfully licensed for the four Compositions referenced in the Precision/Trax Documents entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, and *Bring Down the Walls*, Defendants have wholly and completely failed to pay Heard and/or Owen and continue to refuse to account for and pay to Heard and/or Owen any mechanical royalties or other income derived from Defendants' exploitation of their works.

76. Upon information and belief, since 1986, Defendants have generated millions of dollars in income stemming from their exploitation of the Compositions and Recordings.

**COUNT I**
**(DECLARATORY JUDGMENT – FRAUD ON COPYRIGHT OFFICE – RECORDINGS)**
**(Against All Defendants)**

77. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 76, as if fully set forth herein.

78. Heard is now and at all relevant times has been the owner of the copyrights in the Recordings entitled *Can You Feel It*, *Washing Machine*, and *Beyond the Clouds,* and Heard and Owens are now and at all relevant times have been the owners of the copyrights in the Recording entitled *Bring Down the Walls*.

79. In or about 1986 and 1987, Trax Records submitted "Form SR" applications to the Copyright Office when it applied for copyright registrations for the musical compositions <u>and</u>

sound recordings entitled *Can You Feel It, Washing Machi*ne, *Beyond the Clouds*, and *Bring Down the Walls* (the "Trax Applications")*.

80.    In each of the Trax Applications, in the space entitled "Author(s)," Trax Records correctly inserted "Larry Heard" as the "Author" of *Can You Feel It, Washing Machi*ne, and *Beyond the Clouds* and correctly inserted "Larry Heard and Robert Owens" as the "Authors" for the song *Bring Down the Walls*.

81.    But in each of the Trax Applications, Trax Records also inserted knowingly false information in two other spaces: <u>first</u>, in the space titled "Claimant(s)," Trax Records inserted "© ℗ Trax Records"; <u>second</u>, in the space titled "Transfer," Trax Records inserted words to the effect "by written contract" or "transfer of all rights by author" indicating that Trax Records had received a written copyright assignment from Heard and/or Owens for the copyrights in the Recordings of the same titles.

82.    By filing a combined "PA" and "SR" copyright registration application for the "sound recording and music" in the name of Trax Records for *Can You Feel It, Washing Machi*ne, *Beyond the Clouds*, and *Bring Down the Walls*, Trax Records thus falsely asserted that it owned the <u>sound recording copyrights</u> for those works.

83.    In 1986 and 1987, "Trax Records" was issued copyright registrations for the Compositions and Recordings entitled *Washing Machine, Can You Feel It*, and *Beyond The Clouds*, for which a combined registration was issued bearing registration number SR-0008153, as well as for *Beyond The Clouds,* for which a registration was issued bearing registration number SR-0081157 (the "Trax SR Registrations").

16

84.    Upon information and belief, the "Trax Records" indicated in the Trax SR Registrations is Trax, Inc., Trax, Ltd., or one of the other Trax Defendants, which are now owned or at that time were owned and controlled by Sherman and/or Cain.

85.    Neither "Trax Records" nor any of the other Defendants was ever assigned or transferred _any_ copyright ownership interests in the Recordings. Thus, they were not – at any time since the date of the creation of the Recordings – the copyright owner(s) thereof, including as of the date "Trax Records" submitted the Trax Applications.

86.    The Trax SR Registrations were procured by fraud by one or more Defendants based on the fraudulent representations of ownership in the Recordings.

87.    As a result, the Trax SR Registration must be invalidated since the information as to ownership and "transfer" were false and material.

88.    Such inaccurate information was included on the Trax Applications with knowledge that it was inaccurate and such inaccuracy would have caused the Register of Copyrights to refuse the registration had it known that it was false.

89.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201, _et seq_., authorizes this Court to declare the rights and legal relations of parties to an active controversy under its jurisdiction.

90.    There is an actual, present, and existing dispute between and among the parties concerning the validity of the Trax SR Registrations relating to the ownership of the Recordings.

91.    The Court's determination of the issues presented herein would be final and conclusive insofar as the declaratory judgment sought by Plaintiffs would fully and finally resolve the parties' disputes with respect to such copyright registrations.

**WHEREFORE**, Plaintiffs respectfully prays that the Court find in his favor and enter an order and judgment as follows: issuing a Declaratory Judgment finding that **ALL DEFENDANTS** committed Fraud on the Copyright Office with their applications for Copyright Registrations for the sound recordings *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, and *Bring Down the Walls,* invalidating the existing Copyright Registrations for those sound recordings held in Defendants' names, and entering such further relief that this Court deems just and appropriate as well as Plaintiffs' costs, including reasonable attorney's fees as provided by statute, and interest on its damages at the legal rate.

## COUNT II
## (WILLFUL DIRECT COPYRIGHT INFRINGEMENT OF THE COMPOSITIONS)
### (Against All Defendants)

92.     Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 91, as if fully set forth herein.

93.     Heard and/or Owens are authors and owners of the copyrights in and to the Compositions entitled *Distant Planet*, *Never No More Lonely* and *Donnie* (the "Infringed Compositions") for which copyright registrations were issued to them in 1987 bearing Registration Nos.   PAu-001027097,   PAu-00927655   and   PAu-00971117   (the   "Heard-Owens PA Registrations").

94.     As the owner(s) of the copyrights in the Infringed Compositions, Heard and/or Owens have the exclusive rights under the Copyright Act, among other things, to produce, manufacture, transmit and/or distribute Phonorecords embodying them.

95.     Defendants conduct, either directly and/or through third parties, constitutes an infringement of Plaintiffs' musical composition copyrights for *Distant Planet*, *Never No More Lonely* and *Donnie*.

96.     Plaintiffs duly satisfied the statutory requirements regarding registration and deposit of the Infringed Copyrights upon which the alleged infringements are based pursuant to 17 U.S.C. §§ 407 and 411 as well as other statutory formalities required under the Copyright Act.

97.     At various times during the three-year period prior to the commencement of this action, Defendants, individually and/or collectively, have copied and mechanically reproduced the Infringed Compositions in full, and distributed, sold, and/or licensed both physical and digital copies of the Infringed Compositions, all without authorization or consent of Heard or Owen.

98.     Defendants, individually and/or collectively, were without any license or other form or permission, whether express or implied, to copy, reproduce, duplicate, perform, record, sell, use, transmit or distribute the Infringed Compositions.

99.     By reproducing, manufacturing, distributing, transmitting, and selling copies of the Infringed Compositions without any license or other form or permission, the Defendants have infringed Plaintiffs' rights in violation of the Copyright Act.

100.    The Defendants' acts were in knowing and reckless disregard of Plaintiffs' rights in and to the Infringed Compositions, and such infringements were willful as that term is defined in the Copyright Act.

101.    As a direct result of the Defendants' infringement of the Infringed Compositions, Plaintiffs are entitled to their actual damages with respect to each of the Infringed Compositions, including the Defendants' profits from such infringements, as will be proven at trial.

102.    Alternatively, Plaintiffs are entitled to the maximum to statutory penalties under 17 U.S.C. § 504, in the amount of $150,000 with respect to each timely registered work that was infringed, to disgorgement of Defendants' profits, and to any and all other relief the Court deems just and proper under the law.

103. Plaintiffs, or either of them, are also entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

104. Defendants' conduct has caused, and unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be compensated or measured in money. Plaintiffs have no adequate remedy at law.

105. Pursuant to 17 U.S.C. §502, Plaintiffs, or either of them, are entitled to a permanent injunction prohibiting further infringement of the Infringed Compositions.

**WHEREFORE**, Plaintiffs respectfully prays that the Court find in his favor and enter an order and judgment as follows: finding **ALL DEFENDANTS** liable for direct infringement of Plaintiffs' musical composition copyrights in *Distant Planet, Never No More Lonely and Donnie*, and (i) awarding actual damages pursuant to 17 U.S.C. §504(b), including Defendants' profits, in such amounts as may be found; or (ii) in the alternative and at Plaintiffs' election relating to the infringements of *Distant Planet, Never No More Lonely and Donnie*, statutory damages pursuant to 17 U.S.C. § 504(c) in the maximum amount allowed by law, (iii) awarding Plaintiffs the costs of this action, including reasonable attorney's fees, pursuant to 17 U.S.C. §505 relating to the infringements of *Distant Planet, Never No More Lonely and Donnie*, and (iv) entering such further relief that this Court deems just and appropriate, as well as Plaintiffs' costs, including reasonable attorney's fees as provided by statute, and interest on its damages at the legal rate.

## COUNT III
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Against Cain)

106. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 105, as if fully set forth herein.

20

107.   At various times during the three-year period prior to the commencement of this action, the Infringed Compositions have been and continue to be illegally reproduced, published, licensed and/or sold and distributed without Plaintiffs' authorization in violation of 17 U.S.C. § 101 *et seq.*

108.   Plaintiffs, or either of them, own the copyrights in the Infringed Compositions which have been infringed by the Defendants as hereinabove alleged.

109.   Cain is secondarily liable under the Copyright Act for such infringing acts, including for the direct infringement by of Plaintiffs' exclusive rights by Precision/Trax, Trax, Inc. and Trax, Ltd.

110.   Cain induced, caused, participated in, aided and abetted and/or materially contributed to the infringing conduct by Precision/Trax, Trax, Inc. and Trax, Ltd.

111.   Cain is liable as a contributory copyright infringer. Cain had actual and constructive knowledge of the infringing activity that occurred and is occurring with respect to the Infringed Compositions, and induced, caused, participated in, aided and abetted and/or materially contributed to such infringing conduct by Precision/Trax, Trax, Inc. and Trax, Ltd.

112.   The foregoing acts of infringement by Cain have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiffs' rights.

113.   As a direct and proximate result of such infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs, or either of them, are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each of the Infringed Compositions or such other amounts as may be proper.

114. Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs, or either of them, are entitled to actual damages with respect to each of the Infringed Compositions, including Cain's profits from such infringements, in such amounts as will be proven at trial.

115. Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money. Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiffs respectfully prays that the Court find in his favor and enter an order and judgment as follows: finding **DEFENDANT RACHAEL CAIN** liable for contributory infringement of Plaintiffs' musical composition copyrights in *Distant Planet, Never No More Lonely and Donnie*, and (i) awarding actual damages pursuant to 17 U.S.C. §504(b), including any profits of Defendant Rachel Cain, in such amounts as may be found; or (ii) in the alternative and at Plaintiffs' election relating to the infringements of *Distant Planet, Never No More Lonely and Donnie*, awarding statutory damages pursuant to 17 U.S.C. § 504(c) in the maximum amount allowed by law; (iii) relating to the infringements of *Distant Planet, Never No More Lonely and Donnie*, awarding Plaintiffs the costs of this action, including reasonable attorney's fees, pursuant to 17 U.S.C. §505; and (iv) entering such further relief that this Court deems just and appropriate, as well as Plaintiffs' costs, including reasonable attorney's fees as provided by statute, and interest on its damages at the legal rate.

### COUNT IV
### (BREACH OF CONTRACT)
### (By Heard Against Precision/Trax Records and Trax Records, Inc.)

116. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 115, as if fully set forth herein.

117. Since in or about 1986, Precision/Trax Records and/or its successors-in-interest and/or persons or entities acting through them or under their authority (including without limitation Cain, Trax Ltd. and Trax, Inc.) have continued to exploit the Compositions and Recordings entitled *Can You Feel It, Washing Machine*, *Beyond the Clouds* and *Bring Down the Walls* (hereinafter the "Heard Works"), as to which Precision/Trax was issued purported mechanical licenses, including without limitation, through the worldwide sale, license and/or distribution of those works in both physical formats as well as through digital service providers such as Spotify, iTunes, Band Camp, Soundcloud and YouTube.

118. Defendants have failed and refused to pay and account to Heard for their exploitation of the Heard Works despite the contractual obligations to do so.

119. As a result, Heard has been damaged in an amount to be determined at trial but believed to be greater than $1,000,000.

**WHEREFORE**, Plaintiffs respectfully prays that the Court find in his favor and enter an order and judgment as follows: awarding Heard compensatory damages against **DEFENDANTS PRECISION/TRAX RECORDS AND TRAX RECORDS, INC.** for the material breach of contract in an amount to be proved at trial, but not less than $1,000,000, and entering such further relief this Court deems just and appropriate, as well as Plaintiffs' costs, including reasonable attorney's fees as provided by statute, and interest on its damages at the legal rate.

<u>**COUNT V**</u>
<u>**(BREACH OF THE WARRANTY OF GOOD FAITH AND FAIR DEALING)**</u>
**(Against Precision/Trax Records and Trax Records, Inc.)**

120. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 119, as if fully set forth herein.

121. Defendants have continued to exploit the Heard Works including, through the worldwide sale, license and/or distribution of those works in both physical formats as well as through digital service providers such as Spotify, iTunes, Band Camp, Soundcloud and YouTube.

122. Defendants have failed and refused to pay or account for the exploitation of the Heard Works despite the contractual obligations to do so.

123. Defendants have received substantial income from the exploitation of the Heard Works and have failed and refused to pay Heard his rightful share of that income.

124. The Defendants have exercised any contractual rights they, or either of them, may have with respect to the Heard Works, arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties.

125. As a result, thereof, the Defendants breached the implied warranty of good faith and fair dealing that adheres to every contract as a matter of law.

126. As a result, thereof, Heard has been damaged in an amount to be determined at trial but believed to be greater than $1,000,000.

**WHEREFORE**, Plaintiffs respectfully prays that the Court find in his favor and enter an order and judgment as follows: awarding Heard compensatory damages against **ALL DEFENDANTS** for the breach of the implied warranty of good faith and fair dealing in an amount to be proved at trial, but not less than $1,000,000, entering such further relief that this Court deems just and appropriate.

**COUNT VI**
**(UNJUST ENRICHMENT)**
**(Against All Defendants)**

127. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 126, as if fully set forth herein.

128.  Defendants have continued to exploit the Heard Works including, through the worldwide sale, license and/or distribution of those works in both physical formats as well as through digital service providers such as Spotify, iTunes, Band Camp, Soundcloud and YouTube.

129.  Defendants have received substantial income from the exploitation of the Heard Works and have failed and refused to pay Plaintiffs their rightful share of that income.

130.  Defendants have received money which belongs to Plaintiffs under circumstances whereby in equity and good conscience they ought not keep it.

131.  As a result, thereof, the Defendants have been unjustly enriched by its receipt and retainer of money otherwise belonging to Plaintiffs in an amount to be determined at trial but believed to be in excess of $1,000,000.

**WHEREFORE**, Plaintiffs respectfully prays that the Court find in his favor and enter an order and judgment as follows: awarding Plaintiffs damages against **ALL DEFENDANTS** for unjust enrichment in an amount to be proved at trial, but not less than $1,000,000, and entering such further relief that this Court deems just and appropriate.

## COUNT VII
### (CONSTRUCTIVE TRUST)
#### (By Heard Against All Defendants)

132.  Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 131, as if fully set forth herein.

133.  Defendants have continued to exploit the Heard Works including, through the worldwide sale, license and/or distribution of those works in both physical formats as well as through digital service providers such as Spotify, iTunes, Band Camp, Soundcloud and YouTube.

134.  Defendants have failed and refused to pay or account for the exploitation of the Heard Works despite the contractual obligations to do so and despite Heard's demands that they do so.

135.  Defendants have received substantial income from the exploitation of the Heard Works and have failed and refused to pay Heard his rightful share of that income.

136.  Defendants have received money which belongs to Heard under circumstances whereby in equity and good conscience they ought not keep it.

137.  As a result, Defendants hold money otherwise belonging to Heard in constructive trust in an amount to be determined at trial but believed to be greater than $1,000,000.

**WHEREFORE**, Plaintiffs respectfully prays that the Court find in his favor and enter an order and judgment as follows: against **ALL DEFENDANTS**, imposing a constructive trust in an amount to be proved at trial, but not less than $1,000,000, and entering such further relief that this Court deems just and appropriate.

## COUNT VIII
## (VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT)
### (By Plaintiffs Against All Defendants)

138.  Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 137 as if fully set forth herein.

139.  Defendants have committed deceptive acts or practices, including, but not limited to, selling and distributing to the public from their offices in Chicago, Illinois, physical recordings and digital distribution (through streaming services or otherwise) of the Recordings under the representation that they owned and controlled such works.

140.  Such acts or practices were knowingly false, deceptive and misleading.

141.  Defendants intended that the public rely on these deceptions in the purchasing of those physical records and/or licensing of such works via music streaming services.

142.  Defendants' deceptive acts or practices occurred in a course of conduct involving trade or commerce, specifically the wrongful commercial exploitation of the Recordings.

143.  Defendants' deceptive acts or practices have proximately caused Plaintiffs' actual damages in an amount to be determined at trial but believed to be greater than $1,000,000.

144.  In addition to his actual damages, Plaintiffs are entitled under the statute to reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiffs respectfully prays that the Court find in his favor and enter an order and judgment as follows: against **ALL DEFENDANTS** a judgment that the Defendants' conduct violates the Illinois Consumer Fraud Act and imposing damages in an amount to be proved at trial, but not less than $1,000,000, and entering such further relief as this Court deems just and appropriate, as well as Plaintiffs' costs, including reasonable attorney's fees as provided by statute, and interest on its damages at the legal rate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all issues which are so triable.

Dated: June 23, 2020

By: /s/Robert S. Meloni
    Robert S. Meloni, *pro hac vice* forthcoming
    Thomas P. McCaffrey, *pro hac vice* forthcoming
MELONI & McCAFFREY, a Professional Corporation
3 Columbus Circle – 15th Floor
New York, New York 10019
Tel:  (212) 520-6090


By: /s/ Christopher M Heintskill (ARDC No. 6272391)
LEVENFELD PEARLSTEIN, LLC
2 North LaSalle, 13th Floor
Chicago, IL 60602
Tel: (312) 346-8380
cheintskill@lplegal.com
Appearing as Local Counsel

*Attorneys for Plaintiffs Larry Heard and Robert Owens*