UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Larry Heard a/k/a "Mr. Fingers" and Robert Owen, <br><br> Plaintiffs, <br><br> v. <br><br> Trax Records, Inc., Precision/Trax Records, an entity of unknown legal origins, Rachel Sherman née Rachel Cain p/k/a Screamin' Rachel, doing business as Screaming Rachel Cain Music and Trax Records, and John Does 1-10 <br><br> Defendants. | Case No. 20-cv-03678 <br><br> Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Larry Heard and Robert Owens (collectively, "Plaintiffs"), filed an eight-count Amended Complaint against defendants, Trax Records, Inc., Precision/Trax Records, Trax Records, Ltd., Rachel Sherman née Rachel Cain, professionally known as "Screamin' Rachel", and John Does 1-10 (collectively, "Defendants"), for fraud on the copyright office (Count I), willful direct copyright infringement of the compositions (Count II), contributory copyright infringement (Count III), breach of contract (Count IV), breach of the warranty of good faith and fair dealing (Count V), unjust enrichment (Count VI), to impose a constructive trust (Count VII), and violations of the Illinois Consumer Fraud and Deceptive Trade Practice Act ("ICFA") (Count VIII). Currently before the Court is Defendants' motion to dismiss Counts I through III and V through VIII pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the reasons outlined below, Defendants' motion to dismiss [26] is granted in part and denied in part.

**Background**

The following facts are derived from the Amended Complaint and accepted as true for purposes of this motion. Heard is a composer, recording artist, record producer, and musician. Owens is also a composer, recording artist, record producer, and musician. Heard and Owens are both well-known for their contributions to Chicago's house music scene and, shortly after meeting, helped create the house music group "Fingers, Inc."

In 1984, Heard wrote and recorded *Mystery of Love* and *Can You Feel It*. Over the next few years, Heard wrote, recorded, and produced *Washing Machine*. During this time, Owens wrote *Bring Down the Walls*. In or around 1985, Heard co-wrote, recorded, and/or produced musical compositions entitled *Donnie*, *Never No More Lonely* (co-written with Owens), and *Bye-Bye* (co-written with Owens).[1] According to Plaintiffs, Heard, Owens, and several other artists "independently carved out their own musical reputations as the leaders in the house music movement, and their fans easily recognized their individual favorites' music and style." (Amend. Compl. at ¶ 46).

In 1983, Larry Sherman and Jesse Saunders co-founded the record label Trax Records, alternatively referred to as Precision/Trax. Cain, also known as "Screamin' Rachel," was one of the first artists signed by Trax Records. Sometime after signing to Trax Records, Cain married Sherman and became his business partner in the Trax Records companies. Plaintiffs allege that Sherman and/or Cain formed various companies whose name included the term "Trax", including Trax Records, Ltd., Trax Records, Inc., Precision/Trax Records, and Casablanca/Trax Records, Inc. Sherman died on April 8, 2020. By 2007, Trax Records was acquired and subsequently controlled solely by Cain, who remains in control. According to Plaintiffs, Cain consolidated the intellectual property owned or controlled by the various Trax entities. In Cain's 2007 trademark application for

---

[1] The musical compositions entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, *Bring Down the Walls*, *Donnie*, *Distant Planet*, and *Never No More Lonely* will hereinafter be referred to as the "Compositions." The sound recordings entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, *Bring Down the Walls*, *Donnie*, *Distant Planet*, and *Never No More Lonely* will hereinafter be referred to as the "Recordings."

2

"TRAX RECORDS," she stated that her first use in interstate commerce of the Trax trademarks in connection with musical sound recordings took place on August 2, 1985 and August 2, 1988. According to Plaintiffs, Sherman, Cain, and Trax Records took advantaged of unsophisticated music artists and songwriters to build Defendants' music catalogue. Specifically, Plaintiffs allege that Defendants would have music artists and songwriters "sign away their copyrights to their musical works for paltry amounts of money up front and promises of continued royalties throughout the life of the copyrights." (*Id.* at ¶ 65).

In December 1986, Heard executed three documents with Precision/Trax Records. Plaintiffs allege that Precision/Trax Records was not a formal legal entity at the time, but instead, a trademark used by Sherman and/or Cain. The three documents were titled "Assignment of Copyright (Musical Composition)." Plaintiffs allege that Sherman and Cain used the unincorporated entity Precision/Trax Records as an alter ego to run their music empire. Plaintiffs also allege that those three documents "purportedly either assigned Heard's share of the copyrights in four musical compositions to Precision/Trax and granted Precision/Trax a mechanical license to record and release those musical compositions on phonograph records[.]" (Amend. Compl. at ¶ 70).

The first document is titled "Assignment of Copyright (Musical Composition),"[2] "which purports to assign or transfer to Precision/Trax 100% 'of all publishing rights and all right, title and interest in and to the copyrights' then possessed by Heard in the musical compositions *Can You Feel It*, *Washing Machine* and *Beyond the Clouds*." (*Id.* at ¶ 71).

Plaintiffs allege that the second document is mistitled "Assignment of Copyright (Musical Composition)" because it does not include any provisions granting copyright ownership interest in any musical compositions or any sound recordings. Plaintiffs, however, allege that the second

---

[2] It is unclear to the Court whether the first document was signed by both Heard and Sherman as the Amended Complaint appears to contain both allegations. *See id.* at ¶¶ 67 and 71.

document "purport[s] to grant Precision/Trax a non-exclusive mechanical license for the musical compositions *Can You Feel It*, *Washing Machine* and *Beyond the Clouds*, solely for the purpose of 'making and selling phonograph records.'" According to Plaintiffs, Precision/Trax agreed to pay Heard "a fixed amount of $3,000 plus 15% 'based on the sale of these records.'" (*Id.* at ¶ 72).

Plaintiffs allege that the third document is also mistitled "Assignment of Copyright (Musical Composition)" because it does not include any provisions granting copyright ownership interest in any musical compositions or any sound recordings. Plaintiffs, however, allege that the third document "purport[s] to grant Precision/Trax a non-exclusive mechanical license for the musical composition *Bring Down the Walls* solely for the purpose of 'making and selling phonograph records.'" (*Id.* at ¶ 71). According to Plaintiffs, Precision/Trax agreed to pay Heard "a fixed amount of $3,000 plus 15% 'based on the sale of these records.'" *Id.*

In 1986 and 1987, the Register of Copyrights issued registrations to Heard, alone or together with his co-authors, including Owens, for the copyrights in certain Compositions. In 1986 and 1987, the Register of Copyrights also issued Trax Records registrations for the same copyrights in certain Compositions, as well as the Recordings. Plaintiffs allege that they are the original authors of each of the Recordings and the Compositions. Plaintiffs allege that Defendants "at all relevant times acted in concert to improperly gain control and/or ownership of Heard's and Owens' intellectual property rights for their music and exploit that ownership and control to the Defendants' individual and common benefit." The unlawful acts of Defendants included falsely claiming copyright ownership of four recordings in the Form SR copyright applications for the recordings *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, and *Bring Down the Walls*. Specifically, Defendants asserted in their application that copyright ownership had been transferred to Trax Records via a written copyright assignment agreement.

Plaintiffs allege that the Recordings and the Compositions have been "sold, distributed, or exploited either directly by the Defendants, or any one of them, or licensed by Defendants many times over to licensees throughout the world," (*Id.* at ¶ 87), since 1986. Plaintiffs allege that "some of the Recordings have been materially edited, remixed, and otherwise altered, without Heard's and/or Owen's knowledge or permission, including making derivative versions through the addition of other writers (including Cain)." (*Id.* at ¶ 88). Plaintiffs further allege that Heard nor Owens have ever received a single accounting or payment from Defendants for monies derived from their musical works.

Upon information and belief, Plaintiffs allege that Defendants have made millions of dollars in income stemming from the Compositions and Recordings, since 1986. Plaintiffs allege that "Cain made the deals and entered into agreements with third parties for the exploitation of the songs containing the Infringed Compositions[3], knowing she had no right to do so." (*Id.* at ¶ 134). Lastly, Plaintiffs allege that Cain and Sherman were aware that they had no rights in the Infringed Compositions but nonetheless entered into these third-party agreements.

Based on these facts, Plaintiffs brought eight claims against Defendants: (1) fraud on the copyright office in Count I; (2) willful direct copyright infringement of the compositions in Count II; (3) contributory copyright infringement in Count III; (4) breach of contract in Count IV; (5) breach of the warranty of good faith and fair dealing in Count V; (6) unjust enrichment in Count VI; (7) to impose a constructive trust in Count VII, and (8) violations of the Illinois Consumer Fraud and Deceptive Trade Practice Act in Count VIII. Defendants now move to dismiss Counts I through III and V through VIII.

**Legal Standard**

---

[3] The Compositions entitled *Distant Planet*, *Never No More Lonely*, and *Donnie* will hereinafter be referred to as the Infringed Compositions.

5

When considering a Rule 12(b)(6) motion, the court accepts all of the plaintiff's allegations as true and views them "in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be more than speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Additionally, Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted). The particularity requirement of Rule 9(b) is designed to discourage a "sue first, ask questions later" philosophy. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011).

**Discussion**

*Count I: Fraud on the Copyright Office*

Defendants first argue that Plaintiffs' fraud on the copyright office claim should be dismissed pursuant to Rule 9(b) because it is not plead with particularity and fails to identify the who, what, when, where, and how of the fraud. Fraud on the copyright office claims are subject to the heightened pleading requirements of Rule 9(b). *O.T. Pickell Builders, Inc. v. Witowski*, No. 96 C 4233, 1998 WL 664949, at *5 (N.D. Ill. Sept. 16, 1998) (Manning, J.). To plead fraud on the copyright office, Plaintiffs must allege: "the copyright applicant knowingly failed to disclose certain information to the Copyright Office with the intent to defraud the copyright office and that the

6

Copyright Office would have probably denied the copyright application if it had been made aware of the undisclosed information." *Id.*, 1998 WL 664949, at *5.

Here, Plaintiffs allege that, in or around 1986 and 1987, Defendants knowingly and with the intent to defraud made false statements to the Copyright Office when they submitted their Form SR applications to register *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, and *Bring Down the Walls*. Plaintiffs allege that Defendants made false representations that Defendants obtained ownership of the copyrights via written contracts signed by Plaintiffs. Plaintiffs further allege that the Copyright Office would not have issued the registration had it known that Defendants did not own the copyrights to the musical compositions. The Court finds that Plaintiffs have sufficiently plead their fraud on the copyright office claim.

Defendants further argue that Count I should be dismissed as to Cain because Plaintiffs do not allege any facts to support this claim against Rachael Cain personally. The Court disagrees as the Amended Complaint provides reasonable notice as to each defendant's respective role. *See P & P Mktg., Inc. v. Ditton*, 746 F. Supp. 1354, 1362 (N.D. Ill. 1990) (Rule 9(b) pleading requirements are relaxed "where the defendants are corporate insiders or control the actions of an entity"). "The key question is whether each defendant is given sufficient notice of their respective roles in order that they may answer the complaint." *Id.* (internal citation omitted). Plaintiffs allege that Cain became Sherman's business partner in Trax Records sometime after signing with Trax Records, in 1985. Given that Plaintiffs have alleged that Cain was possibly a corporate insider at the time the copyright registration application was submitted, the Court finds that Plaintiffs' pleading is sufficient.

Next, Defendants argue that Count I should be dismissed because Plaintiffs impermissibly lump the Defendants together. For the reasons explained above, Defendants' argument fails because the Amended Complaint gives each Defendant sufficient notice of their respective roles.

7

Defendants also argue that Count I should be dismissed because "[c]onclusory assertions … are not sufficient to allege fraud with particularity." (Defs.' Mem. in Support of Mot. to Dismiss at 8). Specifically, Defendants argue that Plaintiffs' claim fails because "Plaintiffs' premise the fraud claim on the legal conclusion regarding the proper interpretation of three of four documents identified in the Complaint but not attached." *Id.* The Court, however, concludes that Plaintiffs assertion that the relevant agreements did not provide Defendants ownership in the copyrights is sufficient at the motion to dismiss stage.

Lastly, Defendants argue that Count I should be dismissed because the Plaintiffs failed to attach the various agreements between Heard and Trax Records to the Amended Complaint. The Court rejects this argument as Plaintiffs are not required to attach the agreements in order to establish their claim. *See Arnold v. Janssen Pharm., Inc.*, 215 F.Supp.2d 951, 962 (N.D. Ill. 2002) (Gottschall, J.) ("[F]ederal courts, unlike Illinois state courts, do not require that critical documents be attached to the complaint.").

Defendants also moved to dismiss Count I through III for failure to state a claim under Rule 12(b)(6). As stated early, the Court finds that Plaintiffs have sufficiently plead their fraud on the copyright office claim in Count I at this stage. Moreover, Defendants' motion to dismiss Counts II and III is denied as Defendants only argument to support dismissal is that these counts should be dismissed because Count I fails.

*Count V: Warranty of Good Faith and Fair Dealing*

Defendants move to dismiss Count V arguing that it is not an independent claim. The Court agrees. *See McArdle v. Peoria School Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013) ("The obligation of good faith and fair dealing is used as an aid in construing a contract under Illinois law, but does not create an independent cause of action."). The Court therefore grants Defendants' motion to dismiss this Count V with prejudice.

*Count VI: Unjust Enrichment*

Defendants move to dismiss Count VI for failure to state a claim under Rule 12(b)(6). The Court notes that the first-time unjust enrichment is mentioned is in the prayer for relief contained in the Amended Complaint. The Amended Complaint merely states "Plaintiffs respectfully prays that the Court find in his favor and enter an order and judgment …. For COUNT VI awarding Plaintiffs damages against ALL DEFENDANTS for unjust enrichment in an amount to be proved at trial, but not less than $1,000,000." (Amend. Compl. at ¶ 169(f)). The Court concludes that Plaintiffs' unjust enrichment claim is not adequately pled. Accordingly, Count VI is dismissed without prejudice.

*Count VII: Constructive Trust*

Defendants also move to dismiss Count VII for failure to state a claim under Rule 12(b)(6). "A constructive trust is an equitable remedy, not an independent cause of action." *Elsheikh v. Falcon Holdings, LLC*, No. 10 C 2952, 2010 WL 4790908, at *3 (N.D. Ill. Nov. 18, 2010) (Guzman, J.) (citing *People ex rel. Daley v. Warren Motors, Inc.,* 136 Ill.App.3d 505, 91 Ill. Dec. 145, 483 N.E.2d 427, 430 (Ill. App. Ct. 1985), *aff'd,* 114 Ill.2d 305, 102 Ill. Dec. 400, 500 N.E.2d 22 (Ill. 1986)). Therefore, the Court dismisses the claim without prejudice to Plaintiffs seeking a constructive trust as relief if they prevail on their other claims.

*Count VIII: Violations of the ICFA*

Defendants move to dismiss Count VIII arguing that the Plaintiffs fail to satisfy the pleading requirements of Rule 9(b). Plaintiffs assert in their response brief that it need not allege Count VIII with particularity because unfair practices claims do not trigger the heightened pleading standard of Rule 9(b). *See Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services,* 536 F.3d 663, 670 (7th Cir. 2008). However, a review of the Amended Complaint shows that the allegations related to Count VIII repeatedly refer to the practices of Defendants as false, deceptive,

9

and misleading. Such allegations do not support the conclusion that Plaintiffs are asserting an unfair practices claim unrelated to consumer fraud. Thus, Plaintiffs must allege their claim under ICFA with particularity.

In order to state an ICFA claim based on unfair acts or practices, a plaintiff must allege: 1) a deceptive or unfair act or practice by the defendant; 2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; 3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce; 4) actual damage to the plaintiff; and 5) that the damage was proximately caused by the deception. *David v. Bayview Loan Servicing, LLC*, No. 15-cv-9274, 2016 U.S. Dist. LEXIS 57100, at *16, 2016 WL 1719805 (N.D. Ill. Apr. 29, 2016) (Dow, J.); *Martis v. Pekin Mem'l Hosp. Inc.*, 917 N.E.2d 598, 603, 395 Ill.App.3d 943 (2009).

Here, the Plaintiffs' Amended Complaint alleges that Defendants violated the ICFA by "selling and distributing to the public from their offices in Chicago, Illinois, physical recordings and digital distribution (through streaming services or otherwise) of the Recordings under the representation that they owned and controlled such works, while using the enormous goodwill and brand identifications of Heard and/or Owens[.]" (Amend. Compl. at ¶ 160). Specifically, Plaintiffs allege that Defendants have "deceived the public, consumers who have purchased those sound recordings, believing that Defendants were the exclusive owners of, and … had the sole right to license and/or sell, the most popular sound recordings in Trax's purported catalogue, and using the enormous popularity of Heard and Owens among fans of Chicago house music to do so." (*Id.* at ¶ 167). Plaintiffs further allege that Defendants' deceptive acts or practices have proximately caused Plaintiffs' actual damages in an amount to be determined at trial but believed to be more than $1,000,000. The Court concludes that these allegations fall short of alleging with particularity the facts establishing the "who, what, when, where, and how" of the fraud or misrepresentation. *DiLeo*

*v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Accordingly, Count VIII is dismissed without prejudice.[4]

**Conclusion**

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss without prejudice [26]. Further, the Court grants Plaintiffs leave to file a second amended complaint within 21 days of this order.

**IT IS SO ORDERED.**

Date: 7/21/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

---

[4] The Court notes that the ICFA applies only to a plaintiff that is a consumer or can meet the consumer nexus test. *See Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1005-06 (N.D. Ill. 2017) (Tharp, J.) ("[C]ourts have … allowed non-consumers—both business and nonbusiness plaintiffs alike—to go forward with ICFA claims where they satisfy the 'consumer nexus' test."). Plaintiffs should keep this in mind if they wish to reallege Count VIII.