IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| LARRY HEARD a/k/a "Mr. Fingers" and ROBERT OWEN, | ) | |
| | ) | |
| | ) | Case No. 20-cv-03678 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Honorable Sharon J. Coleman |
| | ) | |
| TRAX RECORDS, INC., PRECISION/TRAX | ) | Magistrate Judge Sunil R. Harjani |
| RECORDS, an entity unknown legal origins, | ) | |
| RACHAEL SHERMAN nee RACHAEL CAIN | ) | |
| p/k/a SCREAMIN' RACHAEL, doing business | ) | |
| as SCREAMING RACHAEL CAIN MUSIC | ) | |
| and TRAX RECORDS, and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES**

Defendants, Rachael Cain ("Cain") and Trax Records Inc. ("Trax Records") (Cain and Trax Records are collectively referred to as "Defendants"), for their Answer and Affirmative Defenses to the Amended Complaint filed by Plaintiffs Larry Heard and Robert Owens (Heard and Owens are collectively referred to as "Plaintiffs") state as follows:

## **PRELIMINARY STATEMENT**

1.     This case involves an all-too familiar story of the early days of the music industry: talented, but unrepresented, musicians hungry for their first break were lulled into a business relationship with an unscrupulous record company that made promises it never intended to keep and masqueraded as paternalistic benefactors for musical artists, like a wolf in sheep's clothing.

**ANSWER:**     Trax denies the allegations in paragraph 1.

2.     The artists sometimes signed away valuable rights to their music for consideration that was not merely inadequate but it was never paid. Even worse, the record company compounded its misdeeds by exploiting the artists' other musical works without permission or license to further reap the fruits of their creative output. Eventually, the artists were relegated to mere commodities whose professional names were slapped onto vinyl

records or other goods exploited by the record company to lure consumers who understood that the artist's professional name was a sign of great value.

**ANSWER:**    Trax denies the allegations in paragraph 2.

3.    This is the story of Larry Heard, and Robert Owens and Trax Records.

**ANSWER:**    Trax denies the allegations in paragraph 3.

4.    During the decades since Defendants first began exploiting musical works created by Larry Heard and/or Robert Owens, neither Heard nor Owens was properly compensated for the great value of each's musical labors. Instead, Defendants enriched themselves and brazenly exploited those musical works for their sole benefit, while encouraging and enabling others to do the same.

**ANSWER:**    Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 4, and therefore deny them. Defendants deny the remaining allegations.

<strong><u>PARTIES</u></strong>

5.    Plaintiff, Larry Heard, professionally known as "Mr. Fingers" ("Heard"), is a resident of the State of Pennsylvania.

**ANSWER:**    Defendants admit the allegations in paragraph 5.

6.    Plaintiff, Robert Owens ("Owens"), is a resident of the State of Ohio.

**ANSWER:**    Defendants admit the allegations in paragraph 6.

7.    Defendant Trax Records, Inc. ("Trax Inc."), is a corporation created under the laws of the State of Illinois, having a principal place of business in the City of Chicago.

**ANSWER:**    Defendants admit that Trax Records Inc. is an Illinois corporation with a principal place of business in Chicago.

8.    Plaintiffs are informed and believe, and based thereon allege, that Defendant Precision/Trax Records ("Precision/Trax") is an entity of unknown legal origins, having a principal place of business in the City of Chicago, and at all relevant times was owned and operated by Larry

Sherman ("Sherman"). Larry Sherman died on April 8, 2020, at the age of 70.

**ANSWER:** Defendants admit that Trax Records did business as Precision/Trax Records. Answering further, Defendants admit that Larry Sherman owned and operated Trax Records Inc. and that he died on April 8, 2020.

> 9. Defendant, Trax Records, Limited ("Trax Limited") (sic), was a corporation created under the laws of the State of Illinois, having a principal place of business in the City of Chicago. Trax Limited (sic) was administratively dissolved in 1980.

**ANSWER:** Defendants admit the allegations in paragraph 9 except that they deny the proper name of the subject corporation is Trax Records, Limited and further deny that it is an Illinois corporation. Trax Records, Limited is not a defendant in this matter, having never been served or properly named herein.

> 10. Plaintiffs are informed and believe, and based thereon allege, that at all relevant times, Precision/Trax and Trax Limited conducted business through its principal owners and officers Sherman and Rachel Cain.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 and, therefore, deny them.

> 11. Defendant Rachael Sherman nee Rachael Cain, professionally known as "Screamin' Rachael" is a resident of Chicago, Illinois. Cain operates a music publishing business through a wholly owned publishing entity "Screaming Rachael Cain Music" (hereinafter Rachael Sherman and Screaming Rachael Cain Music shall be collectively referred to as "Cain").

**ANSWER:** Defendants admit Cain is a resident of Chicago, Illinois and that Cain operates a publishing company. Defendants deny the remaining allegations in paragraph 11.

> 12. Plaintiffs are informed and believe, and based thereon allege, that Cain is an owner and officer of Defendants Trax Records, Limited and Trax Records, Inc.

**ANSWER:** Defendants admit Cain is an owner of Trax Ltd.; Defendants deny the remaining allegations in paragraph 12.

3

13.     John Does 1-10 represent the individuals or companies through which Sherman and/or Cain transact business, the identities of which are presently unknown to Plaintiffs. Plaintiffs therefore sues these Defendants by fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of these John Doe Defendants when ascertained.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 and, therefore, deny them.

14.     Plaintiffs are informed and believe, and based thereon allege, that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between and among Defendants Cain and Does 1 through 10, inclusive, on the one hand, and Precision/Trax, Trax Limited (sic) and/or Trax, Inc., on the other, such that any individuality or separateness between them has ceased, and that they and each of them are the alter egos of each other. Plaintiffs are further informed and believe, and based thereon allege, that adherence to the fiction of the separate existence of these Defendants would permit an abuse of the corporate privilege and would promote injustice.

**ANSWER:**     Defendants deny the allegations in paragraph 14.

15.     Plaintiffs are informed and believe, and based thereon allege, that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between Precision/Trax, Trax Limited (sic) and Trax, Inc., and Does 1 through 10, inclusive, such that any individuality or separateness between them has ceased, and that Precision/Trax, Trax Limited (sic) and Trax, Inc., and Does 1 through 5 are the alter egos of each other. Plaintiffs are further informed and believe, and based thereon allege, that adherence to the fiction of the separate existence of Precision/Trax, Trax Limited (sic) and Trax, Inc., and Does 1 through 10 as entities distinct from each other would permit an abuse of the corporate privilege and would promote injustice.

**ANSWER:**     Defendants deny the allegations in paragraph 15.

## JURISDICTION AND VENUE

16.     This is an action for copyright infringement arising under the Copyright Act of 1976, as amended, Title 17, United States Code, §§101 *et seq*. (the "Copyright Act"), and pendant claims pursuant to the laws of the State of Illinois.

**ANSWER:**     Defendants admit that Plaintiffs have invoked aspects of the Copyright Act but deny it is a copyright infringement action.  Further answering, Defendants admit there are pendant claims alleged the Plaintiffs' complaint.

>    17.    The Court has original subject-matter jurisdiction over the Copyright Act claims pursuant to 28 U.S.C. § 1331. To the extent this Complaint contains claims for relief under Illinois law, those claims are specifically authorized to be brought in this Court under the provisions of 28 U.S.C. §§ 1338(a) and 1338(b).

**ANSWER:**     Defendants admit the allegations in paragraph 17.

>    18.    This Court has personal jurisdiction over Defendants because they are domiciled in the State of Illinois and incorporated under the laws of the State of Illinois.

**ANSWER:**     Defendants admit they are subject to the personal jurisdiction of this Court.

>    19.    This Court has further personal jurisdiction over Defendants because they, and each of them, conduct business continuously and systematically in Illinois for the purpose of engaging in, *inter alia*, the manufacture and distribution of sound recordings and the licensing of musical compositions created and/or owned by Heard and Owens, as well as related activities within the State of Illinois.

**ANSWER:**     Defendants admit they are subject to the personal jurisdiction of this Court but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 19 and, therefore, deny them.

>    20.    Defendants are further subject to personal jurisdiction based on their acts of placing their products into the stream of commerce with the expectation that such products will be delivered to and viewed by consumers within the State of Illinois and within this District.

**ANSWER:**     Denied.

>    21.    This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. The citizenship of Plaintiffs is fully diverse from that of Defendants, and the amount in controversy exceeds $75,000, exclusive of interest.

**ANSWER:**     Defendants neither admit nor deny the allegations in paragraph 21 because they call for a legal conclusion to which no answer is required.

22.     Venue is proper in this Judicial District because a substantial part of the events or omissions giving rise to the claim occurred here. Venue is also proper in this Judicial District pursuant to 28 U.S.C. § 1400(a).

**ANSWER:**     Defendants admit that venue is proper in this judicial district.

## ALLEGATIONS COMMON TO ALL COUNTS

**Background**

23.     House music's roots lie in the spontaneous combustion in a handful of Chicago clubs in the early 1980s, when clubs only needed one DJ. At the time, Chicago clubs were usually sound-tracked by jukeboxes. "DJing" is the act of playing existing recorded music for a live audience, which started as early as the 1940s. By the 1970s, after the emergence of more sophisticated technologies to manipulate recorded music, two men from New York City – Frankie Knuckles and Larry Levan – took the art of DJing to the next level. The modern DJ's role expanded from just spinning records at clubs, to that of a performer, engineer, and musician who created a seamless and extended mix of music for a dance party or club.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23.  Further answering, the allegations in paragraph 23 are not relevant to any claim in this case and should be stricken.

24.     Larry Levan and Frankie Knuckles were two of the first superstar DJs. They began their careers at two of the most important early disco clubs: the famed Continental Baths, a gay bathhouse located in the basement of The Ansonia Hotel in New York City, and the Gallery located in the SoHo neighborhood of Lower Manhattan.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24.  Further answering, the allegations in paragraph 24 are not relevant to any claim in this case and should be stricken.

25.     In 1977, after the Garage closed, Levan took up residency at the night club Paradise Garage, also located in SoHo. Knuckles took up residency at Chicago's The Warehouse Club in a three-story former factory located at 206 South Jefferson Street in downtown Chicago.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25.

26. Knuckles brought Chicago a style and technique pioneered in, and previously only known to, New York's disco clubs and loft parties, such as mixing and programming a set and using reel-to-reel tapes.

**ANSWER:** Defendants admit Knuckles began playing house music in Chicago but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 26.

27. Word spread about The Warehouse Club; it is where the term "house" music originated. House music is essentially disco music with electronic drum-machine beats.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

28. As a teenager, Heard used to pass the Warehouse Club after school on his way to work late in the evening, wondering why there were so many people hanging out in the street.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28.

29. Although he had never once set foot in the club, that experience stayed with him until his early 20s when he began creating his own music and, by 1984, began to professionally perform as "Mr. Fingers."

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29.

30. In 1984, Heard bought his first drum machine and synthesizers and wrote and recorded a few songs that would become legendary — raw versions he calls "prototypes" — including *Mystery of Love* and *Can You Feel It.*

**ANSWER:** Defendants admit Heard wrote the songs *Mystery of Love* and *Can You Feel It.* Further answering, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30.

31. Since that time, Heard has been a composer, recording artist, DJ, record producer, and musician, widely known as an important figure in

Chicago's house-music scene. Beginning in the 1980s, Heard was the primary creative force, leader, and lead songwriter for the influential house-music group, "Fingers, Inc." He is regarded as a pioneer of deep house music, bridging the gap between the futurism and "posthuman tendencies" of house and the lush, soulful sound of disco.

**ANSWER:**     Defendants admit Heard is a composer, recording artist, DJ and musician but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 31.

32.     During the next few years, Heard also wrote, recorded, and produced *Washing Machine* which, along with his song *Can You Feel It*, would later be regarded as iconic house-music anthems.

**ANSWER:**     Defendants admit Heard wrote and recorded *Washing Machine* and *Can You Feel It* but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 32.

33.     Around the same time, Owens was employed in the shipping and receiving department of Illinois' Evanston Hospital. There, he would find free time during his workday and, within the privacy of the hospital's private bathrooms, write songs on toilet paper. Two such songs were *Bring Down the Walls* and *Never No More Lonely.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief at to the truth of the remaining allegations in paragraph 33.

34.     Larry Heard met Robert Owens through a mutual friend while Owens was working as a DJ in Chicago's underground dance scene. Owens had created some edits of Heard's instrumental works which he gave to friends Ron Hardy and Frankie Knuckles. Shortly thereafter, Owens started writing lyrics for Heard's instrumentals, including *Mystery of Love, Distant Planet,* and *Donnie.* Shortly thereafter, Heard and Owens, along with Ron Wilson, formed the musical group known as "Fingers Inc."

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34.

35.     Since the early 1980s, Owens has been, and is now, a composer, recording artist, DJ, record producer, and musician, best known for his collaboration with Larry Heard and Ron Wilson in the Chicago house group

8

''Fingers Inc." Owens has also worked with many other collaborators in the house-music and electronica genres.

**ANSWER:** Defendants admit Owens is a composer, recording artist, DJ and musician but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 35.

36. Sprung from the spirit of the world of musical improvisation, Fingers Inc. raised the concept of house music to an art form.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36.

37. In 1985, Heard launched his own record label, which would eventually be called Alleviated Records, selling out pressings of his records from the trunk of his car.

**ANSWER:** Defendants admit that Heard launched his own record label that was eventually known as Alleviated Records but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 37

38. Shortly thereafter, Heard formed business relationships with two other record labels, Atlanta-based Jack Trax Records and Chicago-based D.J. International Records, homes for mid-1980's to 1990's House, Acid House, Detroit Techno, and Jacking Chicago House.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38.

39. In or about 1985-1986, Heard also wrote, recorded, and/or produced two other songs, and sound recordings of those songs, entitled *Beyond the Clouds* (performed by Heard) and *Bring Down the Walls* (performed and co-written by Robert Owens), were similarly widely popular house-music tracks.

**ANSWER:** Defendants admit Heard and Owens wrote the songs *Beyond the Clouds* and *Bring Down the Walls* but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 39.

9

40.     In or about 1985-1986, Heard also wrote, recorded, and/or produced other musical compositions and sound recordings entitled *Donnie* (co-written with Irwin Eberhart and Harri Dennis), *Distant Planet* (co-written with Harri Dennis), *Never No More Lonely* (co-written with Robert Owens), and *Bye-Bye* (co-written with Robert Owens).

**ANSWER:**     Defendants admit the allegations in paragraph 49.

41.     The musical compositions entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, *Bring Down the Walls*, *Donnie*, *Distant Planet*, and *Never No More Lonely* shall be referred to herein as the "Compositions."

**ANSWER:**     Defendants admit the allegations in paragraph 41.

42.     The sound recordings entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, *Bring Down the Walls*, *Donnie*, *Distant Planet* and *Never No More Lonely* shall be referred to herein as the "Recordings."

**ANSWER:**     Defendants admit the allegations in paragraph 42.

43.     And it does not end with just Heard and Owens; there are many others.

**ANSWER:**     Defendants deny the allegations in paragraph 43.

44.     Adonis M. Smith, professionally known as "Adonis," is yet another artist and producer who was cheated by Trax. Adonis never received any royalties for all of his music released by Trax Records – for the past 34 years – which include the pioneering 1986 acid house track *No Way Back* and *We're Rocking Down The House.* Indeed, a fundraiser was recently set up which aims to financially help Adonis because of this decades-long non-payment of royalties he is owed by Trax Records.

**ANSWER:**     Defendants deny the allegations in the first sentence of paragraph 44.

45.     Another house music legend known as "Frankie Knuckles," an American DJ, record producer and remixer, like Plaintiffs Heard and Owens, played an important role in developing and popularizing house music in Chicago during the 1980s.

**ANSWER:**     Defendants deny the allegations in the first sentence of paragraph 45.

46.     Knuckles, Heard, Owens and Smith had independently carved out their own musical reputations as the leaders in the house music movement, and their fans easily recognized their individual favorites' music and style.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 and therefore deny them.

47.    Indeed, Plaintiffs' fans had early on established their allegiances to the three individual Plaintiffs through following their performances at the various clubs in New York and Chicago and other major cities during the early 1980s.

**ANSWER:**    Defendants lack knowledge of information sufficient to form a belief as to the truth of the allegations in paragraph 47 and therefore deny them.

48.    As a result of this historic, enduring cultivation of a loyal fan following of Heard and Owens (and Knuckles and Smith), each has risen to such prominence in the pantheon of House Music artists, that their music, including the songs at issue in this action, are associated with them by the public.

**ANSWER:**    Defendants lack knowledge of information sufficient to form a belief as to the truth of the allegations in paragraph 48 and therefore deny them.  Further answering, these allegation are improper and should be stricken.

49.    Before his untimely death in 2014, Knuckles had called the Trax Records group "barnacles" because "[a]nytime I got some new product coming out they try and piggyback on whatever that it is that I'm doing to try and make whatever they can make off of it."

**ANSWER:**    Defendants lack knowledge of information sufficient to form a belief as to the truth of the allegations in paragraph 49 and therefore deny them.  Further answering, these allegation are improper and should be stricken.

50.    When Knuckles died, Chicago Mayor Rahm Emanuel said Chicago had "lost one of its most treasured cultural pioneers." Cain issued a press release where she said, in part: "I want to thank people around the world, especially those in dance music culture for honoring Frankie Knuckles. There is no doubt that his music, and the love he shared has changed the lives of so many. Though tragically we have lost him in the physical sense, his legacy and the music he created will never die…House Music would not exist as it does today without Frankie Knuckles."

**ANSWER:**    Defendants admit the allegations in this paragraph.

51.     Knuckles could have died a richer man, and been able to leave something to his heirs, if only Trax had paid him what they owed for Trax's exploitation of his music.

**ANSWER:**     Defendants deny the allegations in paragraph 51.

52.     DJ Magazine captured the historic and systemic malfeasance suffered by these artists when it reported on the death of Larry Sherman in April 2020, stating as follows:

> "Sherman's legacy is a complex one, however, with an alleged history of not paying royalties, not providing artists with proper contracts, and using cheap, poor quality vinyl."

**ANSWER:**     Defendants deny the allegations in paragraph 52.

53.     5Mag.net magazine was another media outlet further supported this history when it reported the following about Trax Records, and its now-deceased founder Larry Sherman:

> "Listeners and today's collectors often complain about poor pressings with "pops" and imperfections, reputedly from the use of cheap or recycled vinyl. Many of 5Mag's early profiles of some of Chicago House Music's legends outlined the feeling by the then-young, often black artists of exploitation. Jamie Principle told 5 Mag in 2011 that he never had a contract of any kind with Trax, while DJ Pierre of Phuture, whose Acid Tracks was released on Trax, claimed he never received any royalties at all from the label for what became one of the best-selling tracks of all time."

**ANSWER:**     Defendants deny the allegations in paragraph 53.

**Trax Records**

54.     In 1983, after purchasing the Chicago-based vinyl record-pressing plant, Precision Pressing, Sherman and Jesse Saunders co-founded a record label alternatively called "Trax Records" or "Precision/Trax" (which has no connection to Jack Trax Records). It served as a primary and important distribution outlet for house music.

**ANSWER:**     Defendants admit that Sherman found Trax Records in the early eighties and that it served as a primary and important distribution outlet for house music.   Further

12

answering, Defendants lack knowledge or information sufficient to form a belief as to the truth of

the remaining allegation in paragraph 54.

55.     Defendant Cain was one of the first artists signed by Trax Records. She was (and is) known professionally as "Screamin' Rachael." Cain would later be dubbed the "Queen of House Music" and eventually marry Sherman and become his business partner.

**ANSWER:**     Defendants admit the allegations in paragraph 55.

56.     Cain was one of the first recording artists for Trax Records, being the featured vocal artist on their very first recording — a song called "Fantasy" by Vince Lawrence and Jesse Saunders in 1985.

**ANSWER:**     Defendants admit the allegations in paragraph 56.

57.     Upon information and belief, Cain became Sherman's business partner in the Trax Records companies shortly after signing with Trax Records and before Plaintiffs were signed as Trax artists.

**ANSWER:**     Defendants deny the allegations in paragraph 56.

58.     Over the years, Sherman and/or Cain had formed various companies whose names included the term "Trax," including without limitation Trax Records, Limited Trax Records, Inc., Precision/Trax Records, and Casablanca/Trax, Inc., leaving a trail of dissolved or bankrupt companies.

**ANSWER:**     Defendants deny Cain and/or Sherman left a trail of dissolved or bankrupt

companies but admit the remaining allegations in paragraph 54.

59.     By 2007, after a period of decline from the late 1990s to early 2000s, Trax Records was acquired and thereafter solely controlled by Cain, who remains in sole control of its business operations, and the continued exploitation of its catalogue, including the Compositions and Recordings created by Heard and/or Owens.

**ANSWER:**     Defendants deny the allegations in paragraph 59.

60.     Cain quickly consolidated all of the intellectual property that was one-timed owned or controlled by the various Trax entities. For example, beginning in 2007, Cain began consolidating ownership of various Trax related trademarks in her individual name as owner of the mark, "Rachael Cain DBA Phuture TRAX Records."

**ANSWER:**     Defendants deny the allegations in paragraph 60.

61.    In her two 2007 trademark applications for the mark "TRAX RECORDS," Cain stated under oath pursuant to 18 U.S.C. §1001 that her first use in interstate commerce of the Trax trademarks in connection with musical sound recordings occurred on August 2, 1985 and August 2, 1988, respectively.

**ANSWER:**    Defendants admit the allegations in paragraph 61.

62.    Cain also stated in her applications that her place of business was located at 505 N. Lakeshore Drive, Chicago Illinois, the same address used at that time, and now, by Defendant Trax Records, Inc.

**ANSWER:**    Defendants admit Cain noted in her application that her place of business was located at 505 N. Lakeshore Drive, Chicago Illinois and deny the remaining allegations in paragraph 62.

63.    In support of those applications, Cain submitted as specimens an image of a vinyl sound recording released in the early 1980s containing two tracks entitled "I Need A Party" and "Extacy" and bearing the "Trax Records™" mark, evidencing her use of the marks in interstate commerce.

**ANSWER:**    Defendants admit the allegations in paragraph 63.

64.    In 2008, Cain was issued Registration No. 3466156 (word design mark) and Registration No. 3466459 (word only mark).

**ANSWER:**    Defendants admit the allegations in paragraph 64.

65.    Upon information and belief, over its more than 30-year history of business operations, Sherman, and then Cain and Trax Records, Inc., built their music catalogue by taking advantage of the unsophisticated but creative house-music artists and songwriters by having them sign away their copyrights to their musical works for paltry amounts of money up front and promises of continued royalties throughout the life of the copyrights.

**ANSWER:**    Defendants admit that Trax Records entered into written agreements with house musicians pursuant to which agreements artists signed copyrights to Trax Records, Precision/Trax Records, and Sherman.  Defendants deny the remaining allegations in paragraph 65.

66.    Cain has promoted herself as the force behind "Trax Records." For example, the "About" page of the Trax Records website

14

(https://www.traxrecords.net/about-trax) prominently displays the legend: "THE ORIGINAL HOME OF HOUSE TRAX RECORDS AND PRESIDENT RACHAEL CAIN CELEBRATE 35 YEARS OF HOUSE MUSIC, LOOKING AHEAD WITH 2020 VISION."

**ANSWER:** Defendants admit the allegations in paragraph 66.

**Documents Which Purport to Grant Trax Records Rights in Heard's Compositions.**

67. In December 1986, Heard signed three documents with "Precision/Trax Records" which, at the time, was not a formal legal entity, but rather a trademark utilized by Sherman and/or Cain. At the time, Heard did not have legal counsel.

**ANSWER:** Defendants admit Heard entered into at least four agreements with Precision/Trax Records and Trax Records regarding the Musical Compositions and Sound Recordings. Defendants deny the remaining allegations in paragraph 67. In addition, the written agreements the parties entered into are the best evidence of their terms, conditions and provisions; the Defendants deny each and every allegation in paragraph 67 inconsistent therewith.

68. On November 15, 1985, Heard, through his company Fingers Incorporated, entered into a separate agreement titled "Contract for Recording Artists" with D.J. International Records, a Chicago record label founded in 1985 that specializes in house music. That agreement provided that Heard would render his exclusive services as a recording artist to DJ International Records.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief of the allegations in paragraph 68.

69. Upon information and belief, during this time, Sherman and Cain were using the unincorporated entity Precision/Trax Records as an alter ego through which they ran their burgeoning music empire. Sherman and Cain were both directly involved with the creation and execution of the plan to improperly gain control and/or ownership of Plaintiffs' intellectual property rights in their music. Both Sherman, Cain and Trax Records, Inc. (by 2002 when Trax Records, Inc.) was formed, acted in concert to carry out their plan.

**ANSWER:** Defendants deny the allegations in paragraph 69.

15

70.     These documents, described in further detail below, *purportedly* either assigned Heard's share of the copyrights in four musical compositions to Precision/Trax or granted Precision/Trax a mechanical license to record and release those musical compositions on phonograph records, for what would become Heard's' most popular songs and tracks, entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, and *Bring Down the Walls* (these musical compositions are herein referred to as the "Heard/Trax Compositions").

**ANSWER:**     Defendants neither admit nor deny the allegations in paragraph 70 because they constitute legal conclusions to which no response is necessary; to the extent an answer is required, Defendants deny the allegations in paragraph 70.   Further answering, the written agreements the parties entered into are the best evidence of their terms, conditions and provisions; the Defendants deny each and every allegation in paragraph 70 inconsistent therewith.

71.     The <u>first document</u> is titled "Assignment of Copyright (Musical Composition)," which purports to assign or transfer to Precision/Trax 100% "of all publishing rights and all right, title and interest in and to the copyrights" then possessed by Heard in the musical compositions *Can You Feel It*, *Washing Machine*, and *Beyond the Clouds*. It is undated and appears to be signed by Heard but not by Sherman or anyone else on behalf of Precision/Trax. In exchange for this grant of copyrights, Precision/Trax promised to pay Heard a fixed amount of $3,000.

**ANSWER:**     Defendants admit that Heard: (1) signed the first document entitled "Assignment of Copyright (Musical Composition), (2) agreed to transfer (i) "one hundred (100%) percent of the worldwide right, title and interest in and to the" Musical Composition *Can You Feel It*, *Washing Machine*, and *Beyond the Clouds* to Precision/Trax Records, as well as one (ii) hundred (100%) percent of all publishing rights and all right, title and interest in and to the copyright of the [Musical Compositions]" to Precision/Trax Records, and (3) acknowledged receipt of consideration for the transfer in the amount of $3,000. Defendants neither admit nor deny the remaining allegations in paragraph 71 because they constitute legal conclusions to which no response is necessary; to the extent an answer is required, Defendants deny the allegations in paragraph 71.   Further answering, the written agreements the parties entered into are the best

evidence of their terms, conditions and provisions; the Defendants deny each and every allegation in paragraph 71 inconsistent therewith.

> 72. The <u>second document</u> is dated December 30, 1986, and purportedly signed by Heard and Sherman on behalf of Precision/Trax. It is mistitled "Assignment of Copyright (Musical Composition)" because it does not include any provision for the assignment, transfer, or grant of any copyright-ownership interest. But it does purport to grant Precision/Trax a non-exclusive mechanical license for the musical compositions *Can You Feel It*, *Washing Machine,* and *Beyond the Clouds* solely for the purpose of "making and selling phonograph records." In exchange for this purported mechanical license, Precision/Trax promised to pay Heard a fixed amount of $3,000 plus 15% "based on the sale of these records."

**ANSWER:** Defendants admit that: (1) the second document is dated December 30, 1986, (2) the second document assigns publishing rights to Precision/Trax Records to the musical compositions *Can You Feel It*, *Washing Machine*, and *Beyond the Clouds*, and (3) Heard signed the second document. Defendants neither admit nor deny the remaining allegations in paragraph 72 because they constitute legal conclusions to which no response is necessary; to the extent an answer is required, Defendants deny the allegations in paragraph 72. Further answering, the written agreements the parties entered into are the best evidence of their terms, conditions and provisions; the Defendants deny each and every allegation in paragraph 72 inconsistent therewith.

> 73. The <u>third document</u>, dated November 30, 1986, is purportedly signed on December 30, 1986, by Heard and Sherman on behalf of Precision/Trax. It, too, is mistitled "Assignment of Copyright (Musical Composition)" because it does not include any provision for the assignment, transfer, or grant of any copyright-ownership interest. It does, however, purport to grant Precision/Trax a non-exclusive mechanical license for the musical composition *Bring Down the Walls* solely for the purpose of "making and selling phonograph records." In exchange for this purported mechanical license, Precision/Trax promised to pay Heard a fixed amount of $3,000 plus 15% "based on the sale of these records."

**ANSWER:** Defendants admit that: (1) the third document is dated November 30, 1986 with a hand written date of 12/30/86, (2) the third document is entitled Assignment of Copyright (Musical Composition), and (3) it transfers to Precision/Trax Records a license with respect to the

musical composition *Bring Down the Walls*. Defendants neither admit nor deny the allegations in

73 because they constitute legal conclusions to which no response is necessary; to the extent an

answer is required, Defendants deny the allegations in paragraph 73. Further answering, the

written agreements the parties entered into are the best evidence of their terms, conditions and

provisions; the Defendants deny each and every allegation in paragraph 73 inconsistent therewith.

> 74. Critically, these first, second, and third documents (collectively, the "Precision/Trax Documents") do not contain any grant of copyright ownership or any assignment or transfer of any copyright ownership interests in the <u>sound recordings</u> embodying the performances of Heard for *Can You Feel It?*, *Washing Machine*, *Beyond the Clouds*, and *Bring Down the Walls*.

**ANSWER:**    Defendants deny the allegations in paragraph 74.

> 75. The Precision/Trax Documents also lack any grant of rights to sell, license, distribute, or otherwise exploit any of the <u>Recordings</u> of *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, and *Bring Down the Wall.*

**ANSWER:**    Defendants deny the allegations in this paragraph.

> 76. The Precision/Trax Documents constituted unconscionable contracts of adhesion which would result in decades of revenue streams flowing only to Trax/Precision (or other entities formed and operated by Sherman and Cain), with Heard deriving virtually no economic benefit from their exploitation by Defendants.

**ANSWER:**    Defendants deny the allegations in this paragraph.

> 77. Furthermore, none of the Precision/Trax Documents refers or mentions the Recordings or Compositions entitled *Donnie*, *Distant Planet*, *Never No More Lonely*, and *Distant Planet*.

**ANSWER:**    Defendants admit the allegations in paragraph 77.

> 78. Heard also never assigned to any of the Defendants any copyright ownership interests or other grant of rights of any kind in and to the Compositions entitled *Donnie* or *Distant Planet*. Heard and Owens also never assigned to any of the Defendants any copyright ownership interests or other grant of rights of any kind in and to the Composition entitled *Never No More Lonely*.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78, and therefore deny them.

79. Likewise, Heard and Owens never assigned to any of the Defendants any copyright ownership interests or other grant of rights of any kind in and to the sound recordings entitled *Donnie, Distant Planet and Never No More Lonely.*

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79, and therefore deny them.

80. To Plaintiffs' knowledge, except for the purported limited non-exclusive grants referred to in the Precision/Trax Documents, as hereinabove alleged, no assignments or transfers of any copyright-ownership interests, or other grants, licenses, or permissions of any kind were ever issued to any Defendants, including without limitation, Precision/Trax, for the Compositions or the Recordings.

**ANSWER:** Defendants neither admit nor deny the allegations in paragraph 80 because they constitute legal conclusions to which no response is necessary; to the extent an answer is required, Defendants deny the allegations in paragraph 80.

**Copyright Registrations for the Compositions and the Recordings.**

81. In 1986 and 1987, the Register of Copyrights issued registrations for the copyrights in certain Compositions in the name of Heard, alone or together with his co-authors, including Owens.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67.

82. In 1986 and 1987, the Register of Copyrights also issued registrations in the name of "Trax Records" for the same copyrights in certain Compositions, as well as the Recordings.

**ANSWER:** Defendants admit that the Registrar of Copyrights issued registrations in the name of Trax Records for certain Compositions and Recordings and denies the remaining allegations in paragraph 82.

83.   The titles, copyright claimants, registration numbers, and a description of rights claimed are summarized below:

| TITLE | CLAIMANT(S) - REGISTRANT (S) | REG. NO. | ISSUE DATE | RIGHTS CLAIMED |
|---|---|---|---|---|
| *Can You Feel It* | Larry Heard | PAu-896668 | 10/17/86 | Music |
| *Can You Feel It* | Trax Records | SR-008153 | 2/26/87 | Sound Recording & Music |
| *Washing Machine* | Trax Records | SR-008153 | 2/26/87 | Sound Recording & Music |
| *Washing Machine* | Larry Heard | PAu-777775 | 11/5/85 | Music |
| *Beyond The Clouds* | Trax Records | SR-008153 | 2/26/87 | Sound Recording & Music |
| *Beyond The Clouds* | Larry Heard | PAu-896546 | 10/20/86 | Music |
| *Bring Down the Walls* | Larry Heard & Robert Owens | PAu-911147 | 11/19/86 | Music |
| *Bring Down the Walls* | Trax Records | SR-081157 | 2/26/87 | Sound Recording & Music |
| *Distant Planet* | Larry Heard & H. Dennis | PAu-1027097 | 11/10/87 | Music |
| *Never No More Lonely* | Larry Heard, Robert Owens | PAu-927655 | 1/27/87 | Music |
| *Donnie* | Larry Heard, I. Eberhart & H. Dennis | PAu-971117 | 3/2/87 | Music |

**ANSWER:**   Defendants admit that Sherman and Trax Records registered copyrights in various music and sound recordings as noted in the above chart.  Further answering, Defendants lack knowledge or information sufficient to form as belief as to the truth of the remaining allegations in paragraph 83.

84.     Heard and/or Owens are original authors of each of the Recordings and the Compositions.

**ANSWER:**     Defendants admit the allegations in paragraph 84, on information and belief.

85.     Nonetheless, Defendants, including Cain, at all relevant times acted in concert to improperly gain control and/or ownership of Heard's and Owens' intellectual property rights for their music and exploit that ownership and control to the Defendants' individual and common benefit.

**ANSWER:**     Defendants deny the allegations in paragraph 85.

86.     Among the unlawful acts they committed included falsely claiming copyright ownership of the four most popular recordings in the Form SR copyright applications for the recordings *Can You Feel It, Washing Machine, Beyond the Clouds,* and *Bring Down the Walls* by asserting under oath in those applications that "Trax Records" had been assigned the copyright ownership interest therein pursuant to a non-existent written copyright assignment.

**ANSWER:**     Defendants deny the allegations in paragraph 86.

87.     Since 1986, the Recordings and the Compositions have been sold, distributed, or exploited either directly by Defendants, or any one of them, or licensed by Defendants many times over to licensees throughout the world.

**ANSWER:**     Defendants admit that the Recording and Compositions have been distributed, exploited and licensed by Defendants and rightfully so by others since 1986.  Further answering, from approximately on or about December 2002, Casablanca Trax Limited (which company is not affiliated with the Defendants) caused the Musical Compositions and Sound Recordings to be distributed, exploited and/or licensed.  Defendants deny the remaining allegations in paragraph 87.

88.     Furthermore, some of the Recordings have been materially edited, remixed, and otherwise altered without Heard and/or Owen's knowledge or permission, including making derivative versions through the addition of other writers (including Cain). In fact, there are over one dozen versions of *Can You Feel It* that were released by Trax Records alone.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88.

89. Heard has never received a single accounting or payment from Defendants for monies derived from the exploitations of his musical works.

**ANSWER:** Defendants deny the allegations in paragraph 89.

90. Owens has never received a single accounting or payment from Defendants for monies derived from the exploitations of his musical works.

**ANSWER:** Defendants deny the allegations in paragraph 74.

91. To the extent that mechanical rights were lawfully licensed for the four Compositions referenced in the Precision/Trax Documents entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, and *Bring Down the Walls*, Defendants have wholly and completely failed to pay Heard and/or Owen and continue to refuse to account for and pay to Heard and/or Owen any mechanical royalties or other income derived from Defendants' exploitation of their works.

**ANSWER:** Defendants admit the mechanical rights were lawfully licensed for the four Compositions referenced in the Precision/Trax Documents entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, and *Bring Down the Walls*. Further answering, Defendants deny the remaining allegations in paragraph 91.

92. Upon information and belief, since 1986, Defendants have generated millions of dollars in income stemming from their exploitation of the Compositions and Recordings.

**ANSWER:** The allegations in paragraph 92 are denied.

## COUNT I
## (DECLARATORY JUDGMENT – FRAUD ON COPYRIGHT OFFICE – RECORDINGS)
### (Against All Defendants)

93. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 92, as if fully set forth herein.

**ANSWER:** Defendants repeat their answers to the allegations in paragraphs 1 through 92 as their answer to the allegations in this paragraph.

94.     Heard is now and at all relevant times has been the owner of the copyrights in the Recordings entitled *Can You Feel It*, *Washing Machine*, and *Beyond the Clouds*, and Heard and Owens are now and at all relevant times have been the owners of the copyrights in the Recording entitled *Bring Down the Walls.*

**ANSWER:**     Defendants neither admit nor deny the allegations in paragraph 94 because it calls for a legal conclusion to which no answer is required; to the extent an answer is required, Defendants deny the allegations in paragraph 94.

95.     In or about 1986 and 1987, Trax Records submitted "Form SR" applications to the Copyright Office when it applied for copyright registrations for the musical compositions <u>and</u> sound recordings entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, *and Bring Down the Walls* (the "Trax Applications").

**ANSWER:**     Defendants admit Trax Records submitted applications to the Copyright Office for the musical compositions and sound recordings entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, *and Bring Down the Walls* but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 95 and, therefore, deny them.

96.     According to the Copyright Office, Form SR is to be used for registration applications of published or unpublished sound recordings and should be used when the copyright claim is limited to the sound recording itself. However, it may also be used where the same copyright claimant is seeking simultaneous registration of both the sound recording and the underlying musical composition embodied in the phonorecord.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 96 and, therefore, deny them.

97.     In each of the Trax Applications, in the space entitled "Author(s)," Trax Records correctly inserted "Larry Heard" as the "Author" of *Can You Feel It*, *Washing Machine*, and *Beyond the Clouds* and correctly inserted "Larry Heard and Robert Owens" as the "Authors" for the song *Bring Down the Walls.*

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 97 and, therefore, deny them.

98. But in each of the Trax Applications, Trax Records also inserted knowingly false information in two other spaces: first, in the space titled "Claimant(s)," Trax Records inserted "© ℗ Trax Records"; second, in the space titled "Transfer," Trax Records inserted words to the effect "by written contract" or "transfer of all rights by author" indicating that Trax Records had received a written copyright assignment from Heard and/or Owens for the copyrights in the Recordings of the same titles.

**ANSWER:** Defendants admit receiving a written copyright assignment from Heard and Owens for the copyrights in the Recordings of the same titles. Further answering, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 98 and, therefore, deny them. Further answering, the remaining allegations in paragraph 98 call for a legal conclusion to which no answer is required; to the extent an answer is required, Defendants deny the allegations in paragraph 98.

99. On February 26, 1987, Sherman and/or Cain, acting through their alter ego "Trax Records," caused to be filed Form SR copyright applications with the Registrar of Copyrights seeking registrations in the name of "Trax Records" of the Sound Recording copyrights for *Can You Feel It, Washing Machine and Beyond the Clouds* and *Bring Down the Walls*, which Recordings were created and then owned by Heard and/or Owens.

**ANSWER:** Defendants deny the allegations in paragraph 99.

100. At the time such Form SR applications were filed, neither Cain, Sherman nor Trax Records owned – at that time or any time thereafter – any copyrights in and to the Recordings *Can You Feel It, Washing Machine and Beyond the Clouds* and *Bring Down the Walls*.

**ANSWER:** Defendants deny the allegations in paragraph 100.

101. Cain, Sherman and Trax Records thus made knowingly false statements that they, or either of them, were assigned the copyrights in such Recordings "by written contract" or "transfer of all rights by author" by Heard and/or Owens.

**ANSWER:** Defendants deny the allegations in paragraph 101.

24

102.     Such false representations were made to the Registrar of Copyright under oath, pursuant to 18 U.S.C. §1001, that they, or either of them, had obtained ownership of the copyrights in those Recordings through written transfers signed by Heard and/or Owens, when in fact they had never been assigned any such copyrights.

**ANSWER:**     Defendants deny the allegations in paragraph 102.

103.     Sherman, Cain and/or Trax Records improperly and fraudulently relied on the Precision/Trax Documents that provided "Precision/Trax Records" no more than a non-exclusive mechanical license to mechanically reproduce on phonorecords four of Heard's musical compositions embodying Heard's and/or Owens' performances thereof – knowing at the time that they never obtained copyright ownership in the Recordings themselves.

**ANSWER:**     Defendants deny the allegations in paragraph 103.

104.     By filing a combined copyright registration application using Form SR for the "sound recording and music" in the name of Trax Records for Can You Feel It, Washing Machine, Beyond the Clouds and Bring Down the Walls, Sherman and/or Cain, acting through their alter ego "Trax Records," thus falsely asserted that they owned the copyrights for those Recordings.

**ANSWER:**     Defendants deny the allegations in paragraph 104.

105.     In 1986 and 1987, "Trax Records" was issued copyright registrations for the Compositions and Recordings entitled *Washing Machine*, *Can You Feel It*, and *Beyond The Clouds*, for which a combined registration was issued bearing registration number SR-0008153, as well as for *Beyond The Clouds*, for which a registration was issued bearing registration number SR-0081157 (the "Trax Registrations").

**ANSWER:**     On information and belief, Defendants admit the allegations in paragraph 105.

106.     Upon information and belief, the "Trax Records" indicated in the Trax Registrations is Sherman and/or Cain, acting through their alter ego "Trax Records."

**ANSWER:**     Defendants deny Cain registered the copyrights and that "Trax Records" is an alter ego.  Further answering, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore deny them.

107.     Neither "Trax Records" nor any of the other Defendants was ever assigned or transferred _any_ copyright ownership interests in the Recordings. Thus, they were not – at any time since the date of the creation of the Recordings – the copyright owner(s) thereof, including as of the date "Trax Records" submitted the Trax Applications.

**ANSWER:**     Defendants deny the allegations in paragraph 107.

108.     The Trax Registrations were procured by fraud by Sherman and/or Cain, based on the fraudulent representations of copyright ownership of the Recordings.

**ANSWER:**     Defendants deny the allegations in paragraph 108.

109.     Those false representations were made by Cain and/or Sherman knowingly and with the intent to defraud the Copyright Office into approving and then issuing the Trax Registrations.

**ANSWER:**     Defendants deny the allegations in paragraph 109.

110.     Ownership of the copyright at issue is a material representation on an application for Copyright Registration.

**ANSWER:**     Defendants neither admit nor deny the allegations in paragraph 110 because

they call for a legal conclusion to which no answer is required; to the extent an answer is required,

Defendants deny the allegations.

111.     The Registrar of Copyrights, had it known the truth – that Heard and/or Owens were at the time the sole and exclusive owners of those copyrights – would have refused the registration.

**ANSWER:**     Defendants deny the allegations in paragraph 111.

112.     As a result, the Trax Registrations must be invalidated since the information as to ownership and "transfer" were both knowingly false and material.

**ANSWER:**     Defendants deny the allegations in paragraph 112.

113.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201, _et seq._, authorizes this Court to declare the rights and legal relations of parties to an active controversy under its jurisdiction.

**ANSWER:**     The Defendants admit the allegations in paragraph 113.

26

114.     There is an actual, present, and existing dispute between and among the parties concerning the validity of the Trax Registrations relating to the ownership of the Recordings.

**ANSWER:**     The Defendants deny the allegations in paragraph 114.

115.     The Court's determination of the issues presented herein would be final and conclusive insofar as the declaratory judgment sought by Plaintiffs would fully and finally resolve the parties' disputes with respect to such copyright registrations.

**ANSWER:**     Defendants neither admit nor deny the allegations in paragraph 115 because they call for a legal conclusion to which no answer is required; to the extent any answer is required, Defendants deny the allegations in paragraph 115.

**WHEREFORE**, Defendants request that the Court dismiss each count of Plaintiffs' complaint with prejudice, grant Defendants their attorneys' fees and costs incurred in this action, and grant any additional relief the Court deems just and proper.

## COUNT II
## (WILLFUL DIRECT COPYRIGHT INFRINGEMENT OF THE COMPOSITIONS)
### (Against All Defendants)

116.     Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 115, as if fully set forth herein.

**ANSWER:**     Defendants repeat their answers to the allegations in paragraphs 1 through 115 as their answer to the allegations in this paragraph.

117.     Heard and/or Owens are authors and owners of the copyrights in and to the Compositions entitled *Distant Planet*, *Never No More Lonely* and *Donnie* (the "Infringed Compositions") for which copyright registrations were issued to them in 1987 bearing Registration Nos. PAu-001027097, PAu-00927655 and PAu-00971117 (the "Heard-Owens PA Registrations").

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 117.

118.     As the owner(s) of the copyrights in the Infringed Compositions, Heard and/or Owens have the exclusive rights under the Copyright Act,

among other things, to produce, manufacture, transmit and/or distribute Phonorecords embodying them.

**ANSWER:** Defendants neither admit nor deny the allegations in 118 because they call for legal conclusions to which no answer is required; to the extent an answer is required, Defendants deny the allegations in paragraph 118.

119. Defendants conduct, including the decisions made and execution thereof by Cain, in concert with Sherman during the early years, or individually since 2007, which resulted in the wrongful exploitation of the Infringed Compositions at issue, either directly and/or through third parties, constitutes an infringement of Plaintiffs' musical composition copyrights for *Distant Planet, Never No More Lonely* and *Donnie*.

**ANSWER:** Defendants deny the allegations in paragraph 119.

120. Plaintiffs duly satisfied the statutory requirements regarding registration and deposit of the Infringed Copyrights upon which the alleged infringements are based pursuant to 17 U.S.C. §§ 407 and 411 as well as other statutory formalities required under the Copyright Act.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 120. Further answering, the allegations in paragraph 120 also constitute legal conclusions to which no answer is required.

121. At various times during the three-year period prior to the commencement of this action, Defendants, individually and/or collectively, have copied and mechanically reproduced the Infringed Compositions in full, and distributed, sold, and/or licensed both physical and digital copies of the Infringed Compositions, all without authorization or consent of Heard or Owen.

**ANSWER:** Defendants deny the allegations in paragraph 121.

122. Defendants, individually and/or collectively, were without any license or other form or permission, whether express or implied, to copy, reproduce, duplicate, perform, record, sell, use, transmit or distribute the Infringed Compositions.

**ANSWER:** Defendants deny the allegations in paragraph 122.

123. By reproducing, manufacturing, distributing, transmitting, and selling copies of the Infringed Compositions without any license or other

form or permission, the Defendants have infringed Plaintiffs' rights in violation of the Copyright Act.

**ANSWER:**     Defendants deny the allegations in paragraph 123.

124.     The Defendants' acts were in knowing and reckless disregard of Plaintiffs' rights in and to the Infringed Compositions, and such infringements were willful as that term is defined in the Copyright Act.

**ANSWER:**     Defendants deny the allegations in paragraph 124.

125.     As a direct result of the Defendants' infringement of the Infringed Compositions, Plaintiffs are entitled to their actual damages with respect to each of the Infringed Compositions, including the Defendants' profits from such infringements, as will be proven at trial.

**ANSWER:**     Defendants deny the allegations in paragraph 125.

126.     Alternatively, Plaintiffs are entitled to the maximum to statutory penalties under 17 U.S.C. § 504, in the amount of $150,000 with respect to each timely registered work that was infringed, to disgorgement of Defendants' profits, and to any and all other relief the Court deems just and proper under the law.

**ANSWER:**     Defendants deny the allegations in paragraph 126.

127.     Plaintiffs, or either of them, are also entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

**ANSWER:**     Defendants deny the allegations in paragraph 127.

128.     Defendants' conduct has caused, and unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be compensated or measured in money. Plaintiffs have no adequate remedy at law.

**ANSWER:**     Defendants deny the allegations in paragraph 128.

129.     Pursuant to 17 U.S.C. §502, Plaintiffs, or either of them, are entitled to a permanent injunction prohibiting further infringement of the Infringed Compositions.

**ANSWER:**     Defendants deny the allegations in paragraph 129.

**WHEREFORE**, Defendants request that the Court dismiss each count of Plaintiffs' complaint with prejudice, grant Defendants their attorneys' fees and costs incurred in this action, and grant any additional relief the Court deems just and proper.

## COUNT III
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Against Cain)

130.    Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 129, as if fully set forth herein.

**ANSWER:**    Defendants reallege the allegations in paragraph 1 through 129 as their answer to the allegations in this paragraph.

131.    At various times during the three-year period prior to the commencement of this action, the Infringed Compositions have been and continue to be illegally reproduced, published, licensed and/or sold and distributed without Plaintiffs' authorization in violation of 17 U.S.C. § 101 *et seq.*

**ANSWER:**    Defendants deny the allegations in paragraph 131.

132.    Plaintiffs, or either of them, own the copyrights in the Infringed Compositions *Distant Planet, Never No More Lonely* and *Donnie*, which have been infringed by the Defendants as hereinabove alleged..

**ANSWER:**    Defendants deny the allegations in paragraph 132.

133.    Cain is secondarily liable under the Copyright Act for such infringing acts, including for the direct infringement by of Plaintiffs' exclusive rights by Precision/Trax, Trax, Inc. and Trax, Limited (sic).

**ANSWER:**    Defendants deny the allegations in paragraph 133.

134.    Cain made the deals and entered into agreements with third parties for the exploitation of the songs containing the Infringed Compositions, knowing she had no right to do so.

**ANSWER:**    Defendants deny the allegations in paragraph 134.

135.    For example, in or about 2002, Cain, acting through her alter ego "Trax Records," entered into three separate agreements with Casablanca Trax, Inc. that involved, inter alia, the exploitation of the recordings containing the Infringed Compositions. Cain and Sherman knew at that time

that they had no rights in the Infringed Compositions but nonetheless entered into these third-party agreements.

**ANSWER:**     Defendants deny the allegations in paragraph 135.

136.     Any and all sales of the sound recordings containing the Infringed Compositions by Casablanca Trax, Inc. or any of its distributors or licensees were further infringements of the Infringed Compositions.

**ANSWER:**     Defendants deny the allegations in paragraph 136.

137.     In addition, Cain has exercised exclusive dominion and control over Trax Records during the three-year period prior to the commencement of this Action and continues to do so now.

**ANSWER:**     Defendants the allegations in paragraph 137.

138.     Through this and other misconduct, Cain induced, caused, participated in, aided and abetted and/or materially contributed to the infringing conduct by Trax Records.

**ANSWER:**     Defendants the allegations in paragraph 138.

139.     Cain is liable as a contributory copyright infringer. Cain had actual and constructive knowledge of the infringing activity that occurred and is occurring with respect to the Infringed Compositions, and induced, caused, participated in, aided and abetted and/or materially contributed to such infringing conduct by Precision/Trax, Trax, Inc. and Trax, Limited (sic).

**ANSWER:**     Defendants deny the allegations in paragraph 139.

140.     The foregoing acts of infringement by Cain have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiffs' rights.

**ANSWER:**     Defendants deny the allegations in paragraph 140.

141.     As a direct and proximate result of such infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs, or either of them, are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each of the Infringed Compositions or such other amounts as may be proper.

**ANSWER:**     Defendants deny the allegations in paragraph 141.

142.     Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs, or either of them, are entitled to actual damages with respect to

each of the Infringed Compositions, including Cain's profits from such infringements, in such amounts as will be proven at trial.

**ANSWER:**     Defendants deny the allegations in paragraph 142.

143.    Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money. Plaintiffs have no adequate remedy at law.

**ANSWER:**     Defendants deny the allegations in paragraph 143.

**WHEREFORE**, Defendants request that the Court dismiss each count of Plaintiffs' complaint with prejudice, grant Defendants their attorneys' fees and costs incurred in this action, and grant any additional relief the Court deems just and proper.

## COUNT IV
## (BREACH OF CONTRACT)
### (By Heard Against Precision/Trax Records and Trax Records, Inc.)

144.    Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 143, as if fully set forth herein.

**ANSWER:**     Defendants reallege the answers to the allegations in paragraph 1 through 143 as their answers to the allegations in this paragraph.

145.    Since in or about 1986, Precision/Trax Records and/or its successors-in-interest and/or persons or entities acting through them or under their authority (including without limitation Cain, Trax Limited and Trax, Inc.) have continued to exploit the Compositions and Recordings entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds* and *Bring Down the Walls* (hereinafter the "Heard Works"), as to which Precision/Trax was issued purported mechanical licenses, including without limitation, through the worldwide sale, license and/or distribution of those works in both physical formats as well as through digital service providers such as Spotify, iTunes, Band Camp, Soundcloud and YouTube.

**ANSWER:**     Defendants deny that Trax Records, Precision/Trax Records and other companies affiliated with the same have continued to exploit wrongfully or without right the Compositions and Recordings entitled *Can you Feel It*, *Washing Machine*, *Beyond the Clouds* and *Bring Down the Walls*.  Further answering, since 2002 and continuing to date, the Heard Works

32

(as defined above) have been exploited by Casablanca through a licensing agreement with a third

party.  Further answering, Defendants lack knowledge or information sufficient to form a belief as

to the truth of the remaining allegations.

> 146.    Defendants have failed and refused to pay and account to Heard for
> their exploitation of the Heard Works despite the contractual obligations to
> do so.

**ANSWER:**    Defendants deny the allegations in paragraph 146.

> 147.    As a result, Heard has been damaged in an amount to be determined
> at trial but believed to be greater than $1,000,000.

**ANSWER:**    Defendants deny the allegations in paragraph 147.

**WHEREFORE**, Defendants request that the Court dismiss each count of Plaintiffs'

complaint with prejudice, grant Defendants their attorneys' fees and costs incurred in this action,

and grant any additional relief the Court deems just and proper.

## COUNT V
## (BREACH OF THE WARRANTY OF GOOD FAITH AND FAIR DEALING)
### (Against Precision/Trax Records and Trax Records, Inc.)

The Court dismissed Counts V through VIII of Plaintiffs' Amended Complaint in its July

21, 2021 memorandum and Opinion Order.  (Dkt. No. 43.)  Accordingly no response is necessary

to the allegations in those counts; to the extent an answer is required to the allegations set forth in

Counts V through VIII, Defendants deny them.

## COUNT VI
## (UNJUST ENRICHMENT)
### (Against All Defendants)

The Court dismissed Counts V through VIII of Plaintiffs' Amended Complaint in its July

21, 2021 memorandum and Opinion Order.  (Dkt. No. 43.)  Accordingly no response is necessary

to the allegations in those counts; to the extent an answer is required to the allegations set forth in

Counts V through VIII, Defendants deny them.

## COUNT VII
## (CONSTRUCTIVE TRUST)
### (By Heard Against All Defendants)

The Court dismissed Counts V through VIII of Plaintiffs' Amended Complaint in its July 21, 2021 memorandum and Opinion Order. (Dkt. No. 43.) Accordingly no response is necessary to the allegations in those counts; to the extent an answer is required to the allegations set forth in Counts V through VIII, Defendants deny them.

## COUNT VIII
## (VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT)
### (By Plaintiffs Against All Defendants)

The Court dismissed Counts V through VIII of Plaintiffs' Amended Complaint in its July 21, 2021 memorandum and Opinion Order. (Dkt. No. 43.) Accordingly no response is necessary to the allegations in those counts; to the extent an answer is required to the allegations set forth in Counts V through VIII, Defendants deny them.

## JURY DEMAND

Defendants demand a trial by jury of all issues which are so triable.

Dated: August 26, 2021

**TRAX RECORDS INC. AND RACHAEL CAIN**

By: _____
One of their Attorneys

Richard P. Darke
Duane Morris LLP
190 South LaSalle Street, Suite 3700
Chicago, IL 60601
(312) 499-6743
rpdarke@duanemorris.com
*Counsel for the Defendants*
*Trax Records Inc. and Rachael Cain*

34

## AFFIRMATIVE DEFENSES

1.      Plaintiffs' claim in Count I should be dismissed with prejudice because Plaintiffs lack standing to assert the claim in Count I for alleged fraud on the U.S. Copyright Office.

2.      Plaintiffs' claim in Count I should be dismissed with prejudice because Heard assigned the copyright in and to the Musical Compositions and Sound Recordings to Precision/Trax Records.

3.      Plaintiffs' claims should be dismissed with prejudice because Plaintiffs authorized, impliedly or explicitly, Defendants' alleged infringing use of its works, and Plaintiffs' claims are therefore barred by the doctrine of implied license.

4.      Plaintiffs' claims are barred because it assigned in writing all rights in and to the Musical Composition and Sound Recordings including but not limited to ownership of the master recordings and copyright to Larry Sherman and the companies he owned and/or managed.

5.      Plaintiffs' claims are barred because it assigned in writing all publishing rights in and to the Musical Composition and Sound Recordings to Larry Sherman and the companies he owned and/or managed.

6.      Plaintiffs' claims in Counts I through III are time barred in full by the applicable three-year statute of limitations because Heard and Owens knew in 1987, in 1997 and for many years prior to 2020 when it filed this action, that Larry Sherman, Trax Records, Inc. and others owned the copyright to the Musical Composition and Sound Recordings but Plaintiffs failed to file suit or otherwise contest Defendants' rights in and to the Musical Compositions and Sound Recordings. *See, e.g., Kwan v. Schlein, 634 F.3d 224, 229 (2d Cir. 2011)* (affirming dismissal with prejudice of copyright infringement suit premised on contested copyright ownership).

7. Plaintiffs' breach of contract claim in Count IV is barred in total because it knew or should have known of the allegedly wrongful conduct alleged herein well beyond the applicable 10 year statute of limitations.

8. Plaintiffs' claims in Counts I through III are barred by the three-year limitations period applicable to those claims.

9. All of Plaintiffs' remaining claims are barred by the doctrine of laches.

10. Plaintiffs' claims are barred as a result of Plaintiffs' abandonment of its intellectual property.

11. Plaintiffs' claims are barred, in whole or in part, because Defendants' alleged conduct was in good faith and with non-willful intent, at all times.

12. Plaintiffs' claims are barred because Defendants acted in good faith and without any intent to infringe Plaintiffs' work.

13. Plaintiffs' claims are barred in whole or in part pursuant to the doctrine of estoppel.

14. Plaintiffs implicitly or expressly waived the right to bring the claims set forth in their Complaint.

15. Plaintiffs have failed to mitigate their alleged damages.

16. Plaintiffs waived the right to bring the claims alleged in this action.

17.     Defendants reserve the right to supplement or amend this answer, including through the addition of further affirmative defenses, based upon the course of discovery and proceedings in this action, including, but not limited to, equitable defenses such as unclean hands.

**WHEREFORE**, Defendants request that the Court dismiss the Complaint with prejudice, award Defendants' their attorneys' fees and costs in defending this action, and grant any additional relief the Court deems just.

**TRAX RECORDS INC. AND RACHAEL CAIN**

By: _____
        One of their Attorneys

Richard P. Darke
Duane Morris LLP
190 South LaSalle Street, Suite 3700
Chicago, IL 60601
(312) 499-6743
rpdarke@duanemorris.com
*Counsel for the Defendants*
*Trax Records Inc. and Rachael Cain*